JOEL M. ROGERS v. THE DANBY UNIVERSALIST SOCIETY.

The principles, as to the right of an individual to bring a suit at law against a corporation, of which he is a member,—as to the right of one committee-man, trustee, or agent, among several jointly constituted, to recover in an action on book account for services and expenditures performed and made on his own private account for the corporation,—and as to the authority of these subordinate agencies to pledge to each other, individually, the responsibility of the body for whom they act,—as decided in *Geer* v. *School District No. 10 in Richmond*, 6 Vt. 76, and in *Sawyer* v. *Meth. Ep. Soc. in Royalton*, 18 Vt. 405,—recognized and affirmed.

Where several individuals signed articles of association, for such purposes as are contemplated by the statutes of October 26, 1797, and November 10, 1814, and the form adopted was substantially in conformity to the one prescribed, and provided for the election of three trustees, a secretary, treasurer and other officers, and no words were used indicating an intention not to form themselves into a body corporate, it was held, that they became a body corporate, under those statutes, notwithstanding they did not describe themselves as inhabitants of any town and made no reference, in their articles of association, to the first section of the statute of 1797.

And where, in such case, the association was formed for the purpose of building a meeting house, and by one of the articles the capital stock was fixed at $2,500, and by another the size and style of finishing the house were prescribed, it was held, that the article fixing the amount of capital stock could not be regarded as limiting the cost of the house, and that one of the trustees, who had rendered services and made expenditures in constructing the house, on his own account, in pursuance of a contract between him and the other trustees, might recover therefor in an action on book account against the association, notwithstanding the whole cost of the house much exceeded the amount of the capital stock.

And it was held, that the defendants, in such case, could have no claim to recover against the plaintiff, who was one of the trustees, the amount of demands due to the association, which were left by the trustees with an attorney at law for collection, and were settled with him, but never accounted for to the plaintiff.

And it was also held, that the defendants had no right to claim, in this action, that there should be an amount deducted from the plaintiff's account, equal to his proportion of the outstanding debts of the association, taking his subscription and the aggregate of all the other subscriptions as the basis of computation.

BOOK ACCOUNT. Judgment to account was rendered, and an auditor was appointed, who reported the facts substantially as follows.

The defendants organized, March 1, 1838, and from that time transacted business, by the name of The Danby Universalist Society. The articles of association expressed the purpose to be the building of a meeting house. By the first article it was provided, that the officers of the association should consist of a president, vice-president, secretary, treasurer, a board of trustees consisting of three members, and a prudential committee consisting of seven members, and should be elected annually, and should be liable to removal at any time by a vote of two thirds of the members. By the fifth article it was made the duty of the board of trustees to do all things necessary to the building of the house, and they were empowered to make all contracts, and purchase materials, necessary to building and finishing the house, and the acts of a majority were made binding, if in accordance with the articles of association. By the seventh article it was provided, that the capital stock of the association should be two thousand five hundred dollars, to be divided into one hundred shares, of twenty five dollars each. By the tenth article the location, size and style of finishing the house were provided for. By the sixteenth article the trustees were empowered to commence building the house when the sum of fifteen hundred dollars should be subscribed. It was not stated in the articles of what town the subscribers were citizens, nor was any allusion made, in terms, to any statute law of this state. These articles were signed by the members, and, among others, by the plaintiff, and to the name of each was annexed the sum which he agreed to pay towards building the house. The plaintiff's subscription was two hundred dollars. The amount of all the subscriptions was less than twenty five hundred dollars. The plaintiff was elected and acted as one of the board of trustees from the time of the organization of the association until the hearing before the auditor. The meeting house was erected and finished, under the direction of the trustees, at a cost of nearly five thousand dollars,—twenty seven hundred dollars of which it appeared remained due at the time of the hearing before the auditor; and it also appeared, that there were then some debts due to the society; but the amount was not shown. The house was

Rogers *v.* Danby Universalist Society.

accepted by the society, and was dedicated and used for the purposes contemplated in the articles of association. The plaintiff's account accrued for services rendered and advances and payments made by him, as one of the trustees, on liabilities created by the trustees against the society for building the house; and the auditor reported, that there remained a balance due to him of twelve hundred and seventy three dollars and eighty two cents.

The defendants claimed, that the plaintiff should account for the amount of certain demands, which were placed by the trustees in the hands of one Bucklin, an attorney at law, (since deceased,) for collection, and which were settled with him, but the avails of which were not received by the plaintiff; and whether they were received by either of the other trustees did not appear;—but the auditor disallowed the claim.

The defendants also insisted, that the plaintiff was liable to contribute, with the other members of the society, to the payment of the outstanding debts of the society, in the same proportion that his subscription bore to the aggregate of the subscriptions of the other members; and it was agreed, that the plaintiff's contribution, upon this mode of calculation, would be four hundred dollars; but the plaintiff objected to any such liability,—and, there being no facts proved relative to this matter, other than those already stated, the auditor disallowed the claim.

The defendant filed exceptions to the report; and the county court, September Term, 1845,—WILLIAMS, Ch. J., presiding,—overruled the exceptions, and rendered judgment for the plaintiff for the whole amount found due by the auditor. Exceptions by defendants.

*S. H. Hodges* for defendants.

1. The proof before the auditor did not show, that there was any such corporation in existence as The Danby Universalist Society. The articles of association, by which alone the subscribers are bound, make no reference to the statute of 1797, as required by the statute of 1814. Slade's St. 602. They make no allusion to their being a corporate body; neither do they claim the exercise of corporate powers. To hold them a corporation would render it difficult to distinguish between a mere association and a corporation,

and nearly impossible to associate for purposes within the scope of such statutes, without being incorporated.

2. If it should be held, as suggested in *Burr v. Smith,* 7 Vt. 281, that these associates were so far organized, that they might sue and be sued, still we insist that they remain mutually liable for their respective shares of their joint debts ; and therefore,—1, No one of them can sue the association at law ;—2, If they can, the plaintiff's share of the joint debt should have been deducted from his claim. *Christian Soc. in Plymouth* v. *Macomber,* 5 Metc. 155.

3. The plaintiff and his co-trustees had no authority to incur expenses so greatly exceeding the means of the association, and thus incumber the property with debt and embarrass, if not defeat, their enterprise.

*Dexter* and *Thrall & Pond* for plaintiff.

The society became a corporation, and, for the purposes specified, had all the powers of a corporation. A member of a corporation may sue the corporation, or be sued by it. The trustees, being directed to build and finish a meeting house of certain dimensions and after a certain plan, and being continually under the direction of the society, were not limited in the amount of expenses to the original stock, or subscriptions. While the plaintiff seeks to recover against the society, as a corporation, he is not bound to contribute to pay its debts. If he sought in chancery to have the individual members contribute to .pay his claim, they might then ask him to contribute also.

The opinion of the court was delivered by

DAVIS, J. Several questions raised in this case must be considered as definitely settled by the cases of *Geer* v. *School District No. 10 in Richmond,* 6 Vt. 76, and *Sawyer* v. *Meth. Ep. Society in Royalton,* 18 Vt. 405. Such, in particular, as concern the right of an individual to bring a suit at law against a corporation, of which he is a member,—the right of one committee-man, or trustee, or agent, among several jointly constituted, to recover in his private character, in this form of action, for services and expenditures performed and made on his own private account for the corporation,—and

the power and authority of these subordinate agencies to pledge the responsibility of the body, for whom they act, to each other individually, as well as to any other persons.

There is, perhaps, some incongruity in thus allowing a person to act in this double capacity, as an agent for the corporation contracting with himself as an individual. Some feeling of this kind seems to have suggested to the judge, who delivered the opinion of the court in the first case cited above, the remarks in relation to the authority of a majority of a building committee to enter into a contract with another member. I apprehend, however, there is no occasion to resort to a supposition of this kind. Whether a majority, or the whole, act, the party contracted with may, as well as any other, participate in the bargain. It is, in effect, an application of the same principle, which sanctions a contract between any corporation and an individual member. It is doubtless true, as suggested in the dissenting opinion of Phelps, J., in the same case, that there is reason to apprehend favoritism and partiality in such cases. So there is reason to apprehend partiality and perjury in permitting a party to establish his right to recover by his own oath. Neither in one case, nor the other, is the danger so imminent, as to justify the establishment, on principles of policy, of an irrefragable rule adverse to the received doctrine. Partiality, in any given case, so gross as to amount to fraud, will, when sustained, necessarily defeat the contract.

Other objections have been made to the plaintiff's right to recover in this case, which it becomes necessary to consider.

It is urged, that no such corporate body as the Danby Universalist Society existed.

That certain persons, in that town, on the first of March, 1838, entered into an association for the purpose of building a meeting house in the town, under a written agreement containing a variety of articles, providing for the election of three trustees, a secretary, treasurer, &c., which was subscribed by a number of persons, is admitted. But it is denied, that the association is in the form prescribed by the statute of Nov. 10, 1814, in addition to that of Oct. 26, 1797, or that it had any reference to either of those statutes, or that any intention existed to form a body corporate and politic.

On examining the articles and constitution subscribed, it is apparent, that the statute form is not followed in several particulars;

chiefly in the following; that the subscribers do not describe themselves as inhabitants of Danby, or any other town, and make no reference to the first section of the statute of 1797. Nevertheless, as the purpose for which the association was formed is one expressly contemplated in those statutes, the form adopted is substantially in conformity to the one prescribed, and no words are inserted indicating an intention not to form themselves into a corporate body, we have found no great difficulty in coming to the conclusion, that such a body was duly constituted. The machinery provided in the articles for carrying on conveniently the common concerns of the association, such as the election of a president, vice-president, secretary, treasurer, trustees, prudential committee, &c., all to be chosen annually, to hold office until others should be elected, subject to removal, however, by a vote of two thirds of the members,—most of which would be quite unnecessary in a mere voluntary association of individuals for a temporary purpose,—would seem naturally to impel us to the same conclusion.

A farther objection is made on account of the amount expended for the house being nearly five thousand dollars, while by Art. 7 the capital stock is fixed at two thousand five hundred dollars, and the whole amount actually subscribed was something less than that sum. There is nothing in the law, or in the articles, unless it be the one cited, limiting the responsibilities the corporation may incur in the prosecution of their object, nor the property, real, or personal, which they may lawfully hold. Another article determines the location of the house, the size, number of stories, the interior and exterior style of finishing, &c. The trustees were directed to proceed with the undertaking, as soon as the aggregate amount of subscriptions should reach the sum of fifteen hundred dollars.

It is probable, that, when these matters were arranged, it must have been known, that the house would, or at least might, cost more than $2,500; at all events no restrictions, in that respect, were imposed upon the trustees. Were the question, then, one directly between the defendants on the one side and the three trustees, acting jointly in that capacity, on the other, we could not say, from any facts disclosed in the report of the auditor, that they transcended in their expenditures the authority vested in them. Neither improvidence nor extravagance are shown; and the house, such as it was,

was subsequently accepted, dedicated, occupied and improved by the defendants for the purpose contemplated.

Still less should we be inclined to say, when the duly authorised agents of the defendants contracted with an individual to furnish materials, or perform labor on the house, that his right to recover compensation therefor must depend upon the final contingency, that the whole amount of similar contracts, previously and subsequently made, should not transcend the instructions of the principals. Though that individual should happen, as in this instance, to be one of the agents, it could not vary the principle, though its absurdity and injustice might be somewhat less obvious.

But we do not regard the article, fixing the amount of capital stock, in the light of an instruction, or limitation, as to the expense of the house. It seems rather to have indicated the amount of funds to be raised in the first instance in that particular mode. A similar objection was raised in the case of *Sawyer v. Meth. Ep. Soc. in Royalton*, depending upon a somewhat different state of facts.

The decision of the county court in respect to the notes taken by Bucklin was clearly right,—as also in respect to the claim, that an amount should be deducted from the plaintiff's account, equal to his proportion of the outstanding debts of the society, taking his subscription and the aggregate of all the other subscriptions as the basis of computation,—making the sum of about four hundred dollars. The plaintiff, as a member of the corporation, will be liable, like any other members, to an assessment, or otherwise, if any are so liable, for the payment of this debt, and all other debts, which the society owe. But we have no occasion to determine in what manner this judgment is to be satisfied. The amount for which the plaintiff is entitled to recover cannot be affected by considerations growing out of contingent liabilities hereafter.

The judgment of the county court is affirmed.