Decided 26 February, 1907.

**HAINES MERCANTILE CO. v. HIGHLAND MINES CO.**

88 Pac. 865.

CORPORATIONS—VALIDITY OF MORTGAGES MADE BY OFFICERS AND DIRECTORS FOR THEIR OWN BENEFIT.

The officers and directors of a corporation act in a fiduciary capacity and cannot represent the company and themselves at the same time.

The stock, with the exception of two shares, of a corporation, the directors of which were S, K, and J, was issued to K for a conveyance to it of K's mines. K then contracted to sell the stock to S for $45,000, and deposited it in escrow with a bank. After S had defaulted on his contract, the directors adopted a resolution reciting that the corporation had purchased of K the mines for $45,000, that $35,500 thereof remained unpaid. and directing S, the president, and J, the secretary, to execute to K notes for such sum, secured by mortgage on the mines, which they did. Thereupon K released his claim on the stock deposited in escrow, and authorized the bank to deliver it. *Held*, that the resolution reciting the indebtedness of the corporation to K for the purchase price of the mines, having required the vote of either S or K, both of whom were directly and personally interested therein, was of no force, so that the mortgage, which was to secure the debt of one director to another, was void, there being only the indirect benefit to the corporation that with shares thus released an overissue of stock, for which the corporation was liable, was taken up.

From Baker : SAMUEL WHITE, Judge.

Statement by MR. CHIEF JUSTICE BEAN.

This is a suit by the Haines Mercantile Co., a private corporation, against the Highland Gold Mines Co., another corporation, and M. H. Knapp.

The facts out of which the litigation arises are as follows : In January, 1903, the defendant the Highland Gold Mines Co. was organized with a capital stock of $3,000,000, divided into

shares of $1 each, for the purpose of taking title to, developing and operating, a group of mines in Baker County, belonging to the defendant Knapp. Knapp subscribed for all the capital stock except two shares, which were subscribed by N. J. Sorenson and J. Frank Shelton, respectively. Knapp, Sorenson and Shelton were elected directors, and they elected Sorenson president, Knapp vice-president, and Shelton secretary. Thereafter Knapp submitted to the directors a proposition in writing to convey to the corporation the mining claims referred to in payment of his subscription to its capital stock. This proposition was accepted, the conveyance made and certificates duly and regularly issued to Knapp for 2,999,998 shares of paid-up capital stock. On the next day Knapp entered into a written contract with Sorenson for the sale to him of his (Knapp's) entire holdings in the corporation for $45,000—$2,500 of which was paid in cash at the time, and the remainder was to be paid at stated intervals. Under this contract, and in pursuance thereof, Knapp deposited the shares of stock held by him in the Citizens' National Bank at Baker City in escrow, with authority to the bank to deliver to Sorenson, or his order, one share for every three cents paid into the bank to the credit of Knapp, which amounts should be applied to and considered a payment on the contract for the purchase of such stock by Sorenson. On the same day Sorenson entered into a contract with the mines company, signed by Knapp as vice-president, and Shelton as secretary, by which he agreed to donate and place in the treasury of the company 750,000 shares of the stock contracted to be purchased by him of Knapp upon the completion of such contract, less the number of shares sold or disposed of by him prior thereto for company purposes, and in the meantime he was given the right by the company to work and develop the mines as to him might seem for the best interests of the company. Sorenson thereafter sold and disposed of to divers and sundry persons about 1,200,000 shares of stock, of which many were an overissue; the proceeds of which he used in developing and operating the mines and in payment of $8,000 to the Citizens'

National Bank on the contract for the purchase of Knapp's stock. He thereafter defaulted in his payments under the contract with Knapp.

On April 23, 1905, a meeting of the board of directors of the corporation was held, Sorenson, Knapp and Shelton being present, when a resolution was introduced and adopted, reciting that the company had purchased of Knapp the mining claims referred to for $45,000, no part of which had been paid except the sum of $10,500, leaving due thereon, principal and interest, $35,500, and directing the president and secretary to execute and deliver to Knapp the notes of the company for such amount, and to secure the payment of the same by mortgage on the mining property theretofore conveyed to it by Knapp. The notes and mortgage were thereupon executed on behalf of the company by Sorenson as president, and Shelton as secretary, and Knapp released the stock held in escrow by the Citizens' National Bank, and part thereof was used by Sorenson in taking up and canceling the overissue previously sold by him.

Between the 1st of December, 1903, and the 28th of April, 1905, the plaintiff, the Haines Mercantile Company, sold to the defendant corporation materials, provisions and supplies amounting to $4,214.35, which it is alleged were used in working and developing the mines. No part of this sum has been paid except $2,052.91. On May 13, 1905, the plaintiff filed in the appropriate office a lien on the mines for the balance claimed to be due, and, on the 15th of the same month, brought this suit to foreclose such lien, making Knapp and the company parties defendant. The corporation admitted the validity of the plaintiff's lien, but it was denied by Knapp, who, by way of cross-bill, set up the mortgage given to him by the corporation, and prayed a foreclosure thereof and the sale of the mining property to satisfy the same. The plaintiff and the defendant corporation answered the cross-bill of Knapp, denying the affirmative matters alleged therein, and pleading that the mortgage given to him by the corporation was without consideration, *ultra vires,* and void, and prayed that the same be surrendered up and

canceled. The court below found that the claim of the plaintiff was a valid and subsisting lien upon the property of the corporation, and that the mortgage to Knapp was without consideration and void, and entered decree accordingly. From this decree, Knapp appeals.                                   AFFIRMED.

For appellant there was a brief over the name of *Hart & Smith,* with an oral argument by *Mr. Julius Newton Hart.*

. For respondent Haines Mercantile Co. there was a brief over the names of *Lomax & Anderson* and *Morton D. Clifford,* with an oral argument by *Mr. Leroy Lomax* and *Mr. Clifford.*

For respondent Highland Gold Mines Co. there was a brief over the names of *T. H. Crawford, Butcher, Clifford & Correll* and *N. C. Richards.*

MR. CHIEF JUSTICE BEAN delivered the opinion.

The defendant corporation admits the validity of the lien sued upon by the plaintiff, and it is denied by Knapp alone. Unless he has a valid and subsisting mortgage upon the property against which it is sought to enforce the lien, he is not in a position to question the legality thereof. It requires no argument or citation of authorities to show that, upon the facts as they appear from the records of the corporation defendant, and the several written agreements and contracts offered and admitted in evidence, the mortgage from the defendant company to Knapp was void and of no effect. This evidence shows that it was given by the authority of the directors of a corporation, a majority of whom were personally interested, to secure the payment of a debt from one of such directors to another, and not for any consideration moving to the corporation. It is common learning that the directors and officers of a corporation act in a representative and fiduciary capacity, and have no right to mortgage the corporate property for their personal benefit or to represent the corporation in contracts or transactions in which they are personally interested, and, if they do, the contract or transaction is void: Clark, Corporations, 508; *Curtin* v. *Salmon River Min. Co.* 130 Cal. 345 (62 Pac. 552: 80 Am. St. Rep.

132) ; *People* v. *Township of Overyssel,* 11 Mich. 222; *Haywood*
v. *Lincoln Lum. Co.* 64 Wis. 639 (26 N. W. 184).

It is urged, however, that the organization of the defendant
corporation, and the making of the several contracts and agree-
ments mentioned, were merely designed as a means of enabling
Knapp to sell and dispose of his mining property, and the effect
of the transactions was to sell such property to the corporation
for $45,000, and the mortgage in question was given to him to
secure the corporate debt.   But the intention of the parties,
and the legal effect of their acts, must be determined by what
they did, and not by what Knapp supposed they were doing.
It is undisputed that the corporation was regularly organized
with Knapp's knowledge and assistance; that he subscribed for
all of its capital stock except two shares, and conveyed to it the
mining property in question in payment for such stock and
received certificates therefor.   The corporation thus became the
owner of the mining property, and Knapp of the stock, and the
property was paid for by the corporation, by the issuing and
delivering to Knapp of such stock.   He thereafter contracted
and agreed to sell his stock to Sorenson for the sum of money
named, and Sorenson thereby became liable to him for the pur-
chase price of such stock, and there is no process of reasoning
by which this indebtedness can be transferred from Sorenson
to the corporation.   The resolution of the board of directors,
reciting that the corporation was indebted to Knapp for the
purchase price, was not in accordance with the undisputed facts,
and could not have been adopted without the vote of either
Sorenson or Knapp, who were directly and personally interested
therein; and it is therefore of no force or effect, and cannot be
deemed an assumption by the corporation of the debt due Knapp
from Sorenson on the purchase price of the stock, if such an act
would have been valid in any event.

It is contended, however, that the stock placed by Knapp in
escrow in the bank under the contract for the sale thereof to
Sorenson was, upon the execution of the note and mortgage by
the corporation, turned over by Knapp to Sorenson for the use

and benefit of the corporation, and that the corporation cannot repudiate or deny the validity of the transaction without returning the stock to Knapp. This contention is not supported by the evidence. The testimony is that upon the execution of the mortgage Knapp released the shares of stock theretofore deposited by him with the bank as security for the purchase price, and authorized the bank to deliver all that remained unsold thereof, and released all claims thereto. There is no evidence to whom or for whose benefit the stock was released, but the necessary presumption is that it was delivered to Sorenson, who had contracted to purchase it, and who was entitled to its possession under the terms of the contract between himself and Knapp, and, in the absence of proof of any agreement or understanding to the contrary, the stock must be held to have been delivered to Sorenson for his own benefit, and not that of the company.

Again, it is contended that the corporation was liable in damages to the holders of the overissue of stock sold by Sorenson, and that Sorenson was enabled to take up and cancel such overissue with that delivered to him by Knapp, and thus release the company from liability on account of such overissue; and that this constituted a sufficient consideration to support the mortgage from the company to Knapp. That an indirect benefit of this kind is not a sufficient consideration to make a valid and binding transaction, where the directors of the corporation have, in violation of their duty and trust, mortgaged or pledged the corporate property to secure the payment of a debt of one director to another, is too evident to need elaboration. Sorenson was one of the directors of the corporation, and its president. Knapp was another director, and its vice-president. The two constituted a majority of the board, and it was by their votes that the mortgage was authorized. It was therefore void, and cannot be given validity, because the corporation may be indirectly benefited in some way by the transaction.

AFFIRMED.