[No. 3625.]

WELLINGTON REALTY CO. v. GILBERT.

1. CONTRACT—*Construction—When Consummated*. A contract is consummated when the minds of the parties meet understandingly in the same sense.

Appellee purchased of appellant a certain block of lots in an addition to the City of Boulder. He dealt with reference to a plat delivered to him by appellant, showing the block to contain fourteen lots. A written agreement of sale was framed, describing the property as "Block Two (2)" in the addition, "according to the recorded plat thereof." In fact, no plat was then recorded. Later a new agreement was executed and accepted, bearing the same date, and in the same words as the original, save in respect to the signature, in which a clerical mistake had occurred. Held, that the contract was consummated at the date of the original agreement, and, the block being made to contain only twelve lots by the plat afterwards recorded, appellee was held entitled to a corresponding diminution in the price.

2. MAXIMS—*Falsa Demonstratio*. A contract was entered into for the purchase of a certain block of lots, in a certain townsite, describing the premises as "Block Two (2)," etc., "according to the recorded plat." No plat was then of record, and the purchaser dealt according to and upon the fact of a blueprint exhibited to him by the seller, as the true plat of such townsite. The purchaser was entitled to the premises de-

scribed in the blueprint as Block 2, the phrase "according to the re-
corded plat" being rejected as false demonstration.

3. EVIDENCE—*Parol Admissible.* Parol evidence is admissible to show
the circumstances attending the execution of a writing.

4. VENDOR AND VENDEE—*Vendor Unable to Convey in Part—Abatement
of Price.* One who agrees to convey a body of land for a specified con-
sideration, and, by his own act, renders himself incapable of wholly
fulfilling his contract, may, at suit of the purchaser, be required to con-
vey all that he is able to convey, with an abatement in the agreed price
equal to the difference in value between what was agreed for and what
is conveyed.

*Appeal from Boulder District Court.*   HON. HARRY P.
     GAMBLE, Judge..

     Mr. O. A. ERDMAN, for appellant.

     Messrs. REED, WEST & GOSS, for appellee.

     BELL, J.

We gather from the record before us in this case
that on February 20th, 1907, The Wellington Realty.
Company, appellant, presented to Oscar M. Gilbert, ap-
pellee, a blue print copy of a plat of Wellington Heights
Addition to the City of Boulder, Colorado, exhibiting
an area of ground 350x285 feet, marked block two (2),
containing 14 lots, and represented that a plat of same
was filed in the clerk's office of said county; that, with
the aid of said blue print or plat, the appellee made a
personal examination of the ground, and compared it
with the description exhibited on the blue print, and,
relying on such blue print, the representations of the
appellant, and the ground itself when examined, the
appellee negotiated for and purchased said block two (2),
for which he paid $100.00 in cash on February 20th, 1907,
and agreed to pay $900.00 more in 30 days, and an addi-
tional sum of $4,000.00 within two years from the last
named date, and to pay 6 per cent on deferred payments

until due; that the appellant then and there agreed with appellee, in writing signed by it, to sell said premises on said terms, and on said date receipted for said $100.00 payment, and agreed in writing to execute and deliver to appellee a good and sufficient warranty deed for said block, on the completion of said payments, and to accompany said deed with an abstract showing a perfect title to said premises; that before the $900.00 payment became due the appellant informed the appellee that it would be necessary for it to obtain a court decree quieting the title to said block in the appellant, and then and there executed, signed and delivered to the appellee a written extension of the time of payment of said $900.00 until said title could be quieted in the appellant; that on the 24th day of September, 1907, the appellant, in writing, notified the appellee that the technical defect in the title to the land had been removed, and demanded the immediate payment of the $900.00; that on September 25th, 1907, the appellee tendered the $900.00 but limited the tender, in writing, to the contract made February 20th, 1907, and to the land purchased as it appeared on the plat exhibited to the appellee on February 20th, 1907, and, notwithstanding such limitations, the appellant then and there accepted said payment.

At the time the said $900.00 payment was tendered as aforesaid, according to the testimony of the appellee, the appellant said:

"By the way, this contract was signed by Mr. Degge as president of The Wellington Association instead of The Wellington Realty Company, a technical error, and we have made out a duplicate of that which you sign first; you haven't signed the other one so sign this."

The appellee further testified as follows:

"I took that (duplicate) and read it over and we compared them word for word, and I asked Mr. Webber

(sales agent for both companies) if it was understood that this was a duplicate of the other to correct the technical error—the signature of The Wellington Association instead of The Wellington Realty Company. He (Webber) said 'it was—otherwise identical'. At the suggestion of Mr. Webber I signed it.''

Agent Webber testified at the trial that when he sold block two (2) to appellee in the name of the Wellington Association the legal title stood in the name of W. W. Degge, the president of each company, and the property was handled by him (Degge) through the association, but that afterwards the title was transferred to The Wellington Realty Company, when new contracts were made out to take the place of the original ones.

However, W. W. Degge, president of each company, testified that block two (2), February 20th, 1907, belonged to The Wellington Realty Company; that the Wellington Association was financing The Wellington Realty Company and owned a large block, if not the bulk of, The Wellington Realty Company stock, and stated that he intended to sign the name of The Wellington Realty Company to the written agreement of sale, but, by force of habit, he inadvertently signed the name of The Wellington Association, as most of the sales were then being made through it; but announced to the court that he did not mean to take advantage of that or to go back on the signature and would not repudiate the agreement on the ground that it was signed by The Wellington Association. Whereupon counsel for appellant announced in open court:

''We are perfectly willing that the record may state that The Wellington Realty Company was bound by this instrument.''

On February 20th, 1908, the appellee tendered $240.00 to the appellant, the interest due on the deferred

payment, and accompanied the same with a writing confining the tender to a payment on the contract dated February 20th, 1907, for purchase of block two (2) according to the plat exhibited to the appellee at the time of the purchase. The appellant accepted the tender and money.

On February 20th, 1909, the appellee tendered the balance of the purchase money in gold and demanded a deed for block two (2) covering 14 lots. The appellant made a counter offer to accept the money and give a deed covering 12 lots, and afterwards the appellee offered to take a deed for block two (2) covering 12 lots if appellant would allow a reasonable sum for the two lots eliminated in the amended plat.

It developed after the consummation of the purchase that no plat covering said block two (2) had been filed, and no plat was ever filed in the clerk's office until April 3rd, 1907, covering block two (2), and this plat and the survey for it were made by the same engineer who made the original plat which was in existence, but not recorded, on February 20th, 1907.

As we understand the record, the plat, of which the appellee had a blue print, was not acceptable to the city as an addition to the City of Boulder, and that the blocks prepared for said addition in the amended plat were required to be, and were, reduced to respective areas of 300x285 feet and to 12 lots, so as to render the same admissible as an addition.

The trial court found on adequate testimony that the reduction of block two (2) to the smaller area, and so that it covered only 12 lots after the sale to the appellee, reduced the value thereof $1,100.00 and deducted this amount from the original purchase price and ordered the appellee to pay the remainder thereof, and that the appellant should execute and deliver to the appellee, upon

tender made to it of the remainder above mentioned, a good and sufficient warranty deed for said block two (2) as reduced in area, together with an abstract thereto showing a clear title thereto as provided in the original instrument of sale.

From the foregoing statements it will readily be seen that the controlling points of contention between the parties are as to the time when the contract was consummated, and the area of the block sold. The appellee says that it was consummated February 20th, 1907, and that he then purchased block two (2) containing 14 lots.

The appellant says the contract was not consummated until September 25th, 1907, and at that time block two (2) contained only 12 lots.

The contract was consummated when the minds of the parties met, understandingly, in the same sense.

On February 20th, 1907, the appellant stated, in writing, every condition necessary to make a completed agreement, and the same was signed by The Wellington Association by W. W. Degge, president, and who, with counsel for appellant, agreed that his signature was intended to bind, and should bind, the appellant company.

The appellee on February 20th, 1907, understandingly, accepted the terms of the appellant, paid the $100.00 required of him on the purchase price on that day, and has diligently sought to comply with every condition on his part from that time until the present.

The contract of purchase and sale between the parties was completed on February 20th, 1907, and the property, as then contracted for, must be delivered by the appellant according to the terms of the contract, without reduction on its part, otherwise it will be held responsible to the appellee for the difference in the value thereof.

The first real contention arises upon the wording of the written offer, of sale signed by the appellant and delivered to the appellee. The offer of sale was of block two (2) in Wellington Heights Addition to the City of Boulder, Colorado, *according to the recorded plats thereof.*"

The evidence discloses that a survey had been made of a large plot of ground and that it had been divided into blocks and lots for the purpose of making it an addition to the City of Boulder, and The Wellington Association, through which the property was being handled, had the plat thereof blue printed and was using it for the purpose of advertising and selling the property represented therein. This blue print showed that block two (2) covered 14 lots and had an area of 350x285 feet; and appellee swore on the hearing that the appellant furnished him a blue print and especially pointed out to him on the plat, and informed him, that said block two (2) contained 14 lots and the area as above set forth.

It is evident to our minds that this contract was made for the 14-lot block, and the understanding of the parties was, at the time the sale was closed, that the appellant was selling and that the appellee was purchasing, a 14-lot block.

The appellant says, however, that at the time the writing was made, on February 20th, 1907, no plat covering block two (2) was recorded. That is quite true; but it was the appellant that falsely stated in the written instrument of sale, as well as verbally, that it was selling this block *according to a recorded plat.*

There is and was no question before the parties as to whether a plat was recorded for the purpose of validating the addition. In fact, the appellee testified that he did not care to have the land in question included in the addition, that what he desired was the area of the

ground bargained for. The purpose for which the plat was used was to assist in identifying the ground, and determining the location and area thereof. The only plat in existence covering block two (2) was used for these purposes, but it turned out not to be of record as represented by the appellant. If this misrepresentation should have been by inadvertence or honest mistake, and either of the parties should be required to sustain a loss thereby, then it should fall upon the one who was first at fault. However, we do not apprehend any such serious results from this misrepresentation. The plat without being recorded served all the purposes for which it was desired.

In speaking to a like question the supreme court of Michigan said:

"The deed, it is true, referred to a plat adopted by the Portsmouth Company and stated to have been recorded; but those deeds would, I think, still be good, though the plat would not in fact have been recorded; the declaration that it was recorded would be rejected as *falsa demonstratio*—as an incidental circumstance of much less importance than the fact of the existence of the plat itself—and therefore a fact about which the parties drawing the deed would be likely to be less careful and precise."—*Johnstone v. Scott*, 11 Mich., 231.

We can see no pertinence in the contention of the appellant that the contract was consummated on September 25th, 1907. The evidence shows that there was no endeavor upon that day to make a new contract; but the parties themselves, on the initiation of the appellant, sought to reform the contract consummated February 20th, 1907, so as to show The Wellington Realty Company as the grantor instead of The Wellington Association, as the parties intended to do and should have done when the contract was closed in February. In the substituted contract the parties re-copied the whole of the

original draft including February 20th as the date, provided for the $100.00 to be paid on that date, for the $900.00 to be paid on March 20th, and every other provision that was contained in the original draft, except the substitution of the appellant as grantor. The very conditions upon which the reformation was made were that no other changes should be made in the original draft. If the parties had been seeking to make a new contract, then logically they would have recited the original agreement, that $100.00 had been paid upon the same on February 20th, $900.00 on September 25th, and then would have provided for the future conditions. The very fact that the appellant gave the substituted agreement the date of February 20th, when it was written on September 25th, furnishes a strong inference that there was no thought in the minds of the contracting parties of changing the contract or making a new one, but the purpose was to preserve the evidence of the contract they made in February in writing and to make it enforcible according to the agreement and original intentions of the parties.

Counsel for appellant insists that the trial court violated the elementary rules prohibiting the varying of written contracts by parol evidence when it permitted the witnesses to show the attending circumstances when the written instrument, preserving the evidence of the contract, was made and delivered in February. The purpose was not to add to or take from anything expressed in writing, but the purpose was to find the real intentions of the parties at the time the instrument was signed. Counsel for appellant confessed in open court, or his client did, that the real owner did not appear in the writing as grantor, and the appellant, on September 25th, 1907, insisted to the appellee that the writing did not state the real intentions and contract of the parties, and

asked the appellee to join it in so reforming the writing as to make the real owner of the property the grantor.

Now the appellant strenuously insists that the reformed agreement made on September 25th, 1907, which bore date February 20th, 1907, does not express the real intentions of the parties, but says that was intended as the only consummated contract and that its life should begin from September 25th instead of from February 20th, 1907, as provided in the writings, both original and substituted.

We can see no force whatever in this contention. Neither do we think that the contention that the law regarding the admission of parol evidence was substantially violated by the trial court.

Counsel for appellant also denies the power of the trial court to reduce the purchase price agreed upon for the 14 lots and order the deed and abstract to be executed and delivered to the appellee upon his paying the agreed price, less a reduction of the difference of the value of the 14-lot block sold and the 12-lot block now in the power of the appellant to transfer.

We think the better rule is that where a vendor agrees to convey a body of land for a fixed consideration, and then by his own act, as in this case, renders himself or itself incapable of wholly fulfilling the contract, upon application of the purchaser the vendor may be required to accept such an abatement on the agreed price as would equal the above stated difference in value, and then be ordered to convey all the property sold that he is capable of delivering, as the court ordered in this case. It saves a multiplicity of suits, needless expense, the time of the parties and the court, and is more in harmony with the substantial principles of equity.—2nd Story Equity Jur., 779; *Mellin v. Wooley*, 103 Minn., 498, 115 N. W., 654, 946; *Schiffer v. Adams*, 13 Colo., 582, 22 Pac., 964.

We are impressed with the conclusions that the pleadings and evidence, in this case, justified the findings and decree of the court and that substantial justice has been done and, therefore, such findings and decree are hereby affirmed.