NOLL *v.* HIRSCHFELD.

1. TRIAL—SALES—PRINCIPAL AND AGENT—ISSUES.

In an action for the money paid to defendants for certain Hungarian war bonds which were never delivered, the question as to whether the transaction was one of barter and sale, as claimed by plaintiffs, or one of agency as claimed by defendants, *held*, properly submitted to the jury under conflicting testimony.

2. PLEADING—VARIANCE—DECLARATION—SUFFICIENCY.

Where the declaration contained allegations, supported by testimony, sufficient to state a cause of action, defendants were not entitled to a directed verdict by reason of the fact that the declaration contained many other allegations not sustained by evidence (3 Comp. Laws 1915, § 12454).

3. TRIAL—PRINCIPAL AND AGENT—EVIDENCE—QUESTION FOR JURY.

Where the only written evidence as to the relation of the parties was the receipt for the money, given by defendants, which is not conclusive, although tending to show that of vendor and vendee rather than that of principal and agent, and there was much conflicting oral testimony, the court was not in error in refusing to determine the question as one of law.

4. SAME—INSTRUCTIONS—REQUESTS TO CHARGE.

Where the question of sympathy had not been stressed upon the trial, the refusal of the trial court to give a requested instruction that the jury were not to allow any considerations of sympathy to enter into their deliberations, *held*, not reversible error, although the request was proper and the instruction should have been given.

5. SAME.

A requested instruction restricting plaintiff's right of recovery to a legal rescission was properly refused in the form presented.

6. SAME.

Refusal of a requested instruction which assumed that the relation of the parties was one of agency may not be complained of, where the instruction given on this question

was much more favorable to appellants than that embodied in the request.

7. NEW TRIAL—EVIDENCE—GREAT WEIGHT OF EVIDENCE.

Although the testimony was contradictory, and there were many inconsistencies in the testimony of the two plaintiffs, who were unfamiliar with the English language, verdict in their favor, *held*, not against the great weight of the evidence.

Error to Wayne; Fead (Louis H.), J., presiding. Submitted June 5, 1923.    (Docket No. 1.)    Decided October 1, 1923.

Assumpsit by Joseph Noll and another against Joseph Hirschfeld and Philip Hirschfeld, copartners as Hirschfeld Bros., for money paid for the purchase of certain bonds.    Judgment for plaintiffs.    Defendants bring error.    Affirmed.

*Douglas, Eaman, Barbour & Rogers,* for appellants.

*Edwin R. Monnig (Harold Goodman,* of counsel), for appellees.

McDONALD, J.    All of the parties reside in the city of Detroit.    The plaintiffs are natives of Slavonia in Hungary.    The defendants are copartners engaged in the foreign exchange and brokerage business.    The action is brought to recover $2,025 which plaintiffs paid to the defendants for Royal Hungarian war loan bonds.    On the 21st day of February, 1916, the plaintiffs went to defendants' offices and paid them $2,025, for which they received the following receipt:

"$2025.                                    Detroit, Mich.,
                                              Feb. 21, 1916.

"Received of Joseph Noll and wife, Gertrude Noll, two thousand and twenty-five dollars for K. 15,000 of 6% Royal Hungarian war loan bonds, nominal value.
                                    "HIRSCHFELD BROS.
                                              J. H."

It is the plaintiffs' claim that, having learned through a newspaper advertisement that defendants had these bonds for sale, they went to their office for the purpose of purchasing some; that they paid their money and were informed that the bonds would be delivered in two or three weeks; that they were not delivered though interest thereon was paid by the defendants in two separate installments of $62.50 and $45 respectively; that they became impatient at the delay in receiving the bonds, and frequently went to defendants' place of business and demanded them or their money back; that defendants advised them to wait and they did so, frequently protesting, until June 6, 1921, when this suit was commenced.

It is the defendants' claim that their transaction with the plaintiffs was not for the sale of bonds; that their undertaking was to send plaintiffs' subscription for the bonds to the Royal Hungarian Postal Savings Bank at Budapest, through which all securities issued by the Hungarian government were handled; that all such bonds subscribed for were retained on deposit in this bank and a so-called revenue book issued to the subscriber; that on receipt of plaintiffs' subscription they immediately sent it to the bank at Budapest. The money was received by the bank May 4, 1916, but the revenue book was not sent to the defendants until June 21, 1921, 15 days after the commencement of this suit, and a little more than five years after the money was paid by the plaintiffs. The defendants say that this was due to the failure of the mailing service during the war period and to the revolutionary disturbances in Hungary following the armistice; that in this transaction with the plaintiffs, they were acting as agents only in taking and forwarding their subscription; that they discharged their duties as such and that they made no representations that the bonds

or revenue book would be delivered at any specified time.

At the conclusion of the plaintiffs' proofs defendants made a motion for a directed verdict which was denied.    After the verdict they asked for a judgment *non obstante veredicto*, and later moved for a new trial.    These motions having been refused they have brought the case here on writ of error, claiming that the judgment should be reversed for the following reasons:

"(1) The legal relation between the parties was one of principal and agent and not one of vendor and vendee.   No violation of any duties as agent having been shown, defendants were entitled to verdict and judgment."

This contention of counsel cannot be sustained if there was any competent testimony from which the jury could determine that the contract was one of barter and sale.    Touching this question in his reasons for denying defendants' motion for a new trial, the circuit judge said:

"The plaintiffs' testimony is that, in answer to a newspaper advertisement of defendants that they had Hungarian bonds for sale, they went to defendants' office to buy some bonds.    They asked defendants how many bonds they could get for $2,025, were told 15,000 Kronen, and defendants promised delivery within three weeks.    *    *    *

"When the plaintiffs paid defendants $2,025 in American money upon the transaction, the defendants gave them a receipt, written in English by defendants, covering the amount paid and reciting 'for K. 15,000 of 6% Royal Hungarian war loan bonds, nominal value.'   By 'nominal value' is meant par value.    The receipt upon its face contemplated the transfer of designated property for a price certain.    It has the earmarks of a contract for sale.    *    *    *

"The written evidence of the transaction, prepared by defendants, contemplates, not that the defendants, acting as agents for the plaintiffs for compensation,

should procure for them as much in bonds as their money would buy, but that the defendants, assuming the risk of adverse changes and reaping the benefit of both known present and possible future conditions, agreed to deliver a certain amount in bonds for a certain sum.     This evidence strongly sustains plaintiffs' contention that the transaction was one of barter and sale.     *     *     *

"While it is true that there is much evidence favoring the agency theory, the conflicting testimony, the receipt, and the absence of many of the basic elements of an agency, render the character of the transaction, in my judgment, a fair question for the jury."

The above conclusions, which we approve, dispose of this question adversely to defendants' claim.

"(2) Defendants were entitled to a directed verdict and to a judgment *non obstante,* because of the failure of plaintiffs to bring their testimony within the allegations of their declaration."

In view of the testimony, the declaration is rather unusual.     It contains four counts, most of which are inconsistent with the theory upon which the case was submitted to the jury.     Many of the allegations in the 1st and all of those in the 2d, 3d and 4th are not sustained by any proofs.     If there are any allegations with which the testimony is not at variance, they will be found in the following paragraphs 5 and 7, of the first count.

"5. In the alternative that the defendants in consideration of the payment by the plaintiffs to them of the sum of $2,025 promised to deliver to the plaintiffs three weeks after February 21, 1916, Royal Hungarian war loan bonds of the face of 15,000 Kronen payable in five years from date and bearing interest at the rate of 6% per annum, being obligations of the Kingdom of Hungary, and the defendants further promised and warranted that they owned the said bonds and were in a position to deliver the same to the defendants at the time promised.

"7. That the defendants did not at the said time own

the said bonds, that they were not then in a position to deliver the said bonds to the plaintiffs, and that, though often requested, the defendants never have delivered the said bonds to the plaintiffs."

Omitting the warranty part of paragraph 5, there is left a distinct allegation that the plaintiffs paid $2,025 for certain bonds to be delivered at a specified time; and paragraph 7 alleges that the defendants have never delivered the bonds to the plaintiffs although often requested so to do.      These allegations state a cause of action.

"*  *  *  No declaration shall be deemed insufficient which shall contain such information as shall reasonably inform the defendant of the nature of the case he is called upon to defend."      3 Comp. Laws 1915, § 12454.

The testimony developed on the trial tended to support these allegations and therefore the defendants were not entitled to a directed verdict or a judgment *non obstante.*

"(3) In any event, it was the duty of the trial court to determine as a matter of law what the relation between the parties was and not to allow the jury to determine whether the law of agency or the law of sales applied."

We are unable to agree with this contention of counsel.      The only written evidence was the receipt which is not conclusive.      If it were it would have been the duty of the trial judge to have instructed the jury, as a matter of law, that the relation of the parties was one of vendor and vendee.      In addition to the receipt there was much conflicting oral testimony on this question, the truth of which it was the business of the jury to determine.      The court rightly submitted it to them under proper instructions.

"(4) If it was proper to submit such questions to the jury, then proper requests to charge submitted by

the defendants were erroneously refused, and the charge as given in some respects was erroneous."

The first request which counsel claim was erroneously refused is as follows:

"I charge you that you are not to allow any considerations of sympathy to enter into your deliberations. You are to treat the parties to this litigation on an equal basis and make your findings in accordance with the facts shown by the evidence; and no other considerations than these should have any weight with you."

This was a proper request and should have been given. It was apparently inadvertently omitted, for the trial judge, in his reasons for denying the motion for a new trial, says:

"While the request might properly have been given, the matter of sympathy had not been stressed so as to render such an instruction necessary."

If there had been nothing said to enlist the sympathy of the jury, we cannot assume in a case of this character that the failure to suggest it to them operated to the defendants' prejudice. While the instruction was proper, we think the failure to give it in this case was not reversible error.

It is further claimed that the court erred in refusing the following request:

"I charge you that there is no evidence in this case from which you are warranted in finding that a legal rescission ever took place within any period when the parties could be put in what is known as *statu quo;* or in other words, in the position in which they were originally at the time the contract relations were entered into, and therefore your verdict must be for the defendants."

This request was properly refused in the form in which it was presented. If given, it would have amounted to a directed verdict for the defendants. It is improper because it restricts plaintiffs' recovery to

a legal rescission of the contract. As no complaint is made of the charge given on the matter of rescission, it must be assumed that the question was submitted satisfactorily to the defendants.

Again counsel urge that the court erred in refusing the following request:

"There is evidence in this case of a delay in the receipt of the book showing the deposit of bonds in the name of Joseph and Gertrude Noll. If you find that the delay in the receipt of this book in the city of Detroit is not due to any fault or neglect on the part of the defendants, then they have performed their full duty, and your verdict should be for the defendants."

This request could apply only to the theory of agency. The charge given on this question was much more favorable to the defendants than that embodied in the request; for the court instructed the jury:

"When the defendants had sent the money abroad, they had fulfilled their agency, and in obeying the orders of the plaintiffs they are protected, and the plaintiffs ought not to complain of anything that happened thereafter."

(5) Counsel are insistent that the verdict is against the great weight of the evidence. This claim was submitted to the trial judge in a motion for a new trial. We are not inclined to disturb his conclusions. It is true that there were many inconsistencies in the testimony of the two plaintiffs, who were both unfamiliar with our language; but their testimony is strengthened by the receipt which was drawn by the defendants themselves, and which on its face shows an absolute sale of bonds. On the other hand there was the positive testimony of the defendants, supported by many other facts and circumstances, tending to support their theory of agency. The jury determined the issue in favor of the plaintiffs. The trial court was

convinced that the verdict was not against the clear weight of the evidence and refused to set it aside.  In this we think he reached a correct conclusion.

The judgment is affirmed, with costs to the plaintiffs.

WIEST, C. J., and FELLOWS, CLARK, BIRD, SHARPE, MOORE, and STEERE, JJ., concurred.