## COHANE *v.* ESTON.

1. PRINCIPAL AND AGENT—AGENT MAY NOT BUY PRINCIPAL'S PROPERTY INDIRECTLY.

   A contract for the sale of a lot to an employee of the brokerage firm with which it was listed for sale was nullity, where the brokers were the real purchasers an used the employee's name as a blind, of which fact the principal had no notice.

2. FRAUD—CONSPIRACY—RELATIONSHIP.

   Where a brother of one of the former partners of a brokerage firm purchased a lot from the owner at the suggestion of his brother without any knowledge that the firm ever had or claimed any interest in the lot through a contract executed to an employee, of which the owner also had no notice, the mere fact of relationship was no proof of fraud on the part of the purchaser.

3. QUIETING TITLE—CLOUD UPON TITLE—LAND CONTRACT RECORDED AFTER PURCHASE.

   A fraudulent contract for the sale of a lot to an employee of the brokerage partnership with which it was listed, for the benefit of the firm, of which the owner had no notice, and which was assigned to one of the partners, after dissolution of the partnership, and recorded after the owner had sold the lot to a *bona fide* purchaser, was properly ordered removed as a cloud upon his title, in a suit to quiet title.

Appeal from Wayne; Perkins (Willis B.), J., presiding.    Submitted October 14, 1926.    (Docket No. 103.)    Decided October 3, 1927.

Bill by Louis S. Cohane against Louis M. Eston and another to quiet title to land.    From a decree for plaintiff, defendant Eston appeals.    Affirmed.

[1]Agency, 2 C. J. § 358; Brokers, 9 C. J. § 39; [2]Fraud, 27 C. J. § 201; Vendor and Purchaser, 39 Cyc. p. 1784; [3]Quieting Title, 32 Cyc. p. 1322.

*Louis Starfield Cohane* and *Regene Freund Cohane,* for plaintiff.

*Harold Goodman,* for appellant.

STEERE, J.    This bill of complaint was filed to remove a cloud upon the title of plaintiff Cohane to a residential lot in Greenacres subdivision, city of Detroit.    The case was heard in open court on pleadings and proofs.    A decree was entered as prayed for by plaintiff.    Defendant and cross-plaintiff, Eston, brings the case to this court by appeal, asking review and reversal.

Mrs. Ethel W. Bolz of Warren, Ohio, was owner of a land contract, dated December 30, 1918, by which she had purchased the lot which is the subject of this litigation at a total price of $2,200.    Defendants Cohl and Eston were partners engaged in the real estate business in Detroit.    Mrs. Bolz had listed the lot with this firm for sale at a price of $3,500.    On April 21, 1925, at their suggestion and offer, Mrs. Bolz agreed to sell the property for $3,150 to a proposed purchaser they had found, named Devine, who was an employee in their office, and pay them a commission of $150, which would make her net price $3,000.    Cohl at that time sent Mrs. Bolz his personal check for $50.    It is indicated this payment was then recognized and treated as made from partnership funds.    It was all the money ever put into the transaction by or for the partnership.    Mrs. Bolz was not advised then or later that Devine was an employee of Cohl & Eston, and his figurehead function in the deal is undisputed. ˙  He testified that he signed the purchase agreement at Cohl's request, saying he "had not paid anything in the first place.    I had nothing to do with it, except that I was buying it for Cohl & Eston." They both then tried to sell the property at an advanced price and were unsuccessful.    Not very long

thereafter acute disagreements between them developed over their partnership affairs, leading to a violent quarrel which terminated in an assault and battery by Eston on Cohl, to the latter's temporary undoing, and their friendship ceased with a jolt.    On June 6, 1925, with the aid of an intermediary, they signed articles of dissolution of their partnership, which, amongst other things, provided touching this matter:

"It is further agreed between the parties hereto that the transaction involving lot 216 of Greenacres subdivision, in which the partnership has made a deposit of $50 shall remain partnership property and all moneys derived from said transaction shall be divided equally between the parties hereto."

After this Cohl tried to sell the property, and says he was unable to do so.    Eston said he tried to sell it before their quarrel, but not after.    A reputable attorney in Detroit testified that he was friendly to both of them and acted for both as an intermediary in an endeavor to get them together; that he was authorized by Cohl to make an offer to Eston in this lot transaction, saying:

"Approximately one month after the dissolution, which date appears to be June 16th, I told Mr. Eston that I had been told by Mr. Cohl to tell him that, because of their relationship, he did not care particularly about being interested with him in lot 216 as well as the other lot, but particularly with reference to lot 216; that he wanted to disassociate himself entirely from Mr. Eston.    He wanted Mr. Eston to give him $25 and take over the entire interest in lot 216, or he would be willing to give Mr. Eston $25 and take over from Eston all of the interest.

"*Q.* What was the answer?

"*A.* His answer was no."

Eston denied any such conversation.

Cohl unsuccessfully endeavored for a time to sell the property, while Mrs. Bolz and her husband, in ignorance of the situation, was pressing the firm by corre-

spondence to close the deal which she had by writing agreed to, complaining of the delay. Cohl finally called plaintiff's attention to this lot and advised him to buy it on the net price basis of $3,000 to Mrs. Bolz, less the balance unpaid on the contract, for which she had authorized them to sell it, asking no commission, but that the $50 of his own money, which he claimed to have paid on the contract for the firm, should be paid to him.

In September, 1926, Mrs. Bolz's husband came to Detroit authorized to close the deal for her interest in the lot on their previously agreed terms, bringing with him his wife's land contract and an assignment of it executed by her but left in blank as to the assignee, and the deal was satisfactorily closed. The price asked for her equity in the lot was paid by plaintiff to her husband who acted as her agent. The contract was then delivered to plaintiff with her assignment of it and his name inserted as assignee. She had kept up her payments on the contract, and in closing the deal there yet remained unpaid the sum of $1,184.37 which plaintiff, as assignee, assumed. He also paid Cohl the $50 the latter had paid Mrs. Bolz as a binder on her contract. At the time of this transaction an abstract of the property showed the title clear in those from whom Mrs. Bolz had purchased it.

Having thus secured and paid for this contract, plaintiff subsequently offered the lot for sale at an advanced price, and, as he claims, was making favorable progress in negotiations for its sale when he discovered that Eston had, on November 20, 1925, secured a quitclaim deed of the lot from Devine and had it recorded on November 30, 1925, which blocked all efforts on plaintiff's part to dispose of this property, and he filed this bill of complaint to remove that cloud.

Eston filed an answer in the nature of a cross-bill, charging that Cohl and plaintiff were brothers acting

in collusion to fraudulently deprive him of his interest in the property, and praying that plaintiff be decreed a trustee holding title for the benefit of Cohl & Eston as partners. No accounting is asked, but there is a prayer for general relief.

The trial judge filed a written opinion in which he criticized severely the conduct of Cohl & Eston while acting as agent for Mrs. Bolz, found there was no collusion shown on the part of plaintiff, beyond the mere suspicion from the fact that he was a brother of Cohl, and held that plaintiff in making purchase of this lot acted in good faith.

After a careful reading of this record we find no occasion to disagree with the trial court's strictures on the method by which this real estate firm deceptively sought in violation of the obligation of their agency to tie up and speculate in this property by an indirect sham sale to themselves. Under the facts disclosed here, the contract they obtained from Mrs. Bolz to their puppet, Devine, was a nullity, as was the quitclaim deed Eston secured from him. *Vide, Palmer* v. *Shank Fireproof Storage Co.,* 237 Mich. 627, and cases cited.

It is conceded Cohane and Cohl are brothers, softened only by the unexplained disparity in their surnames, leaving to conjecture whether their brotherhood is by entirety or moiety. We agree with the trial court that their relationship is in itself no proof of the fraud charged, and there is no other convincing proof in the case to support it. It is shown that Cohl had charge of the firm's correspondence with Mrs. Bolz and her husband and made representations to them along the deceptive lines related, secured her tentative agreement to assign her contract on the terms proposed, and then delayed closing the deal by specious excuses while members of the firm were trying to sell the property at a profit to them, in which they failed.

After they quarreled and separated he found himself left in an uncomfortable situation. Mrs. Bolz had become tired of waiting, and he received word that her husband would soon be in Detroit to attend to the business for her, ready to close the deal on their paying the agreed price. He realized that this might result in disclosure of his discreditable conduct in connection with the matter, and was in a frame of mind where he was willing to abandon all thought of profit or commission if he could carry the transaction through smoothly and get back the $50 he had paid on the contract. Under those circumstances, he proposed that plaintiff purchase the lot, recommending it as an advantageous deal. Both plaintiff and he testified positively that he did not disclose to plaintiff any of the details touching the firm's questionable conduct as agents of Mrs. Bolz. By plaintiff accepting the offer he arranged to have a purchaser ready and willing to take the property on the net price to her provided in Mrs. Bolz's tentative contract. Apparently neither she nor her husband knew who the prospective purchaser he had secured was, and she executed the assignment of her contract in blank, with authority for her husband to fill in the proper name. Cohl testifies positively, and is not disputed, that he did not disclose to Mr. Bolz or plaintiff anything of the deceptive details in connection with securing the contract themselves in the name of Devine, and cautiously explained:

"I didn't see any necessity of going into that matter at all."

The only testimony we have in relation to that transaction is positive to the effect that neither plaintiff nor Mr. Bolz were advised of anything irregular in connection with the deal. It does appear that Bolz wanted to be sure that his wife was not obligated to pay any commission, and was assured by Cohl that there would be no commission under the circumstances.

Mrs. Bolz got the price she asked, and plaintiff bought the property as an innocent purchaser. There was no profit to Cohl in this transaction and no commission to any one.

We find no occasion to disturb the decree of the lower court, and the same will stand affirmed, with costs to plaintiff.

SHARPE, C. J., and BIRD, SNOW, FELLOWS, WIEST, CLARK, and MCDONALD, JJ., concurred.