### TROWBRIDGE *v.* O'NEILL.

1. PRINCIPAL AND AGENT—AGENT MAY NOT BUY FROM OR SELL TO PRINCIPAL.

    If employed to sell, the agent may not become the purchaser; and, if employed to buy, he may not be the seller.

2. BROKERS—BROKER ORDERED TO PURCHASE IS AGENT OF BUYER AND MAY NOT SELL STOCK OWNED BY HIM.

    When an intending purchaser orders a broker to purchase a particular stock for him the relationship is that of principal and agent, and the broker may not, in fulfillment of the order, transfer to him stock which he already owns; the commission to be paid being indicative of the service to be rendered and tending to establish the relationship.

3. SAME—EVIDENCE HELD TO SHOW RELATIONSHIP OF VENDOR AND PURCHASER RATHER THAN PRINCIPAL AND AGENT.

    In a suit against a broker by an executor to set aside a

---

As to right of agent employed to sell property of principal to become purchaser without latter's consent, see 21 R. C. L. 829; 3 R. C. L. Supp. 1193; 5 R. C. L. Supp. 1174; 6 R. C. L. Supp. 1287; 7 R. C. L. Supp. 722.

sale of stock to his decedent on the ground that defendant, as agent, sold stock which he already owned instead of buying in the open market, evidence *held*, to show that decedent understood the conditions under which the stock was being sold, and that the relationship was that of vendor and purchaser rather than that of principal and agent.

Appeal from Wayne; Mandell (Henry A.), J. Submitted April 5, 1928. (Docket No. 51, Calendar No. 32,510.) Decided June 4, 1928.

Bill by Luther Trowbridge, executor of the estate of Burt K. Holmes, deceased, against Frank L. O'Neill, doing business as F. L. O'Neill & Company, to set aside a sale of corporate stock. Defendant filed a cross-bill for affirmative relief. From a decree for defendant, plaintiff appeals. Affirmed.

*Arnold F. Zeleznik,* for plaintiff.

*Campbell, Bulkley & Ledyard (Wilson W. Mills* and *Edward C. P. Davis,* of counsel), for defendant.

SHARPE, J. The defendant is a broker and a member of the Detroit Stock Exchange. His business is buying and selling stocks and bonds. The record discloses that in 1922 the Dort Motor Company was authorized to issue 200,000 shares of no par stock, of which amount 125,000 shares were held in escrow by the Michigan securities commission. Twenty-five thousand of the shares released were underwritten by McClure, Jones & Reid, of New York, and Perry, Seymour & Bonbright, of Flint. These underwriters offered to sell portions of this stock to a selling group, and the defendant subscribed for about 3,000 shares. George Slotter, a stock salesman for defendant, talked with B. D. Hammond, over the telephone and also in his office, about purchasing some of this stock. Holmes' name was not mentioned in these

conversations. Hammond, however, discussed the matter with Holmes, and some little time later gave Slotter an order for the purchase of 1,000 shares, 800 to be issued to him and 200 to Holmes. A letter of confirmation signed by the defendant was sent to Holmes on May 27, 1922. It reads as follows:

"We have this day bought for your account and risk: Shares: 200. Security: Dort Motors. Partial payment basis. Price, $20. Amount, $4,000.00. Commission (nothing provided under the commission list.) Total, $4,000. We have charged your account with the total amount, $............. (blank)."

Holmes paid $2,400 on the account. It was the understanding that the stock should be held as security for the balance. In August, 1922, when the price of the stock had declined (it was then offered at $17 a share without a bid therefor), plaintiff demanded a return of the money paid. His demand was at that time based on claimed misrepresentations made to Hammond as to the value of the stock, etc. (not material here to consider). The defendant refused payment, and, after giving notice of intention so to do, offered the stock for sale. Pending the sale, plaintiff filed the bill of complaint herein, alleging that Holmes was induced to make the purchase by the misrepresentations made to Hammond, and that defendant had made a secret profit on the sale by having purchased the stock sold him at $17 per share, and prayed that the sale be held void and canceled and defendant ordered to repay him the $2,400. He secured an injunction, which was continued in force until the trial, restraining the defendant from disposing of the stock. The answer of the defendant was a denial of the material allegations in the bill. In his cross-bill he prayed that plaintiff be ordered by a decree to pay him the balance due. The trial court dismissed plaintiff's bill and entered a decree as prayed for in the cross-bill. Plaintiff appeals.

In plaintiff's brief it is said:

"The sole issue in this matter is whether or not one who has been acting in the capacity of a broker for a client, and receives an·order to purchase stock for the client, can sell stock he has previously purchased or optioned."

The decision hinges on the relationship which existed between the parties at the time the transaction was closed; whether it was that of principal and agent, or vendor and purchaser. The proofs disclose that this salesman had on several prior occasions secured orders from both Hammond and Holmes for the purchase of stock, and that such orders had been executed in the usual manner. If the arrangement made was that the defendant was to purchase stock in the open market for Holmes, then he had no right, without the consent of Holmes, to transfer to him stock which the defendant already owned.

"If employed to sell, the agent may not become the purchaser; and if employed to buy, he may not be the seller." 21 R. C. L. p. 829.

There are many authorities to support the first part of the rule. Our latest expression indorsing it will be found in *Cohane* v. *Eston,* 240 Mich. 234. The latter part of the statement is, we think, equally sound. In *Taussig* v. *Hart,* 58 N. Y. 425, 428, the court said:

"But the plaintiffs allege that they transferred to the defendant's credit one hundred shares of their own stock at 111 3/8, on the day when the stock would have been deliverable had it been bought 'regular.' That transaction did not help the matter. It amounted to a sale by the plaintiffs of one hundred shares of their own stock to the defendant, which was not binding upon the defendant, for the reason that the law does not permit an agent employed to purchase to buy of himself. It is no answer that the intention was honest and that the brokers did better for their principal by selling him their own stock than they could have done by going into the open market. The rule

is inflexible, and although its violation in the particular case caused no damage to the principal, he cannot be compelled to adopt the purchase."

The holding in this case is cited as authority in 2 Mechem on Agency (2d Ed.), pp. 1975-1976, and in 2 Clark & Skyles on the Law of Agency, § 764.    See, also, *Mayo* v. *Knowlton*, 134 N. Y. 250, 252 (31 N. E. 985) ; and *Commonwealth* v. *Cooper*, 130 Mass. 285, 288.    It seems to be clearly established that when an intending purchaser orders a broker to purchase a particular stock for him, the relationship is that of principal and agent, and the broker may not in fulfillment of the order transfer to him stock which he already owns.    The commission to be paid is indicative of the service to be rendered, and tends to establish the relationship.    The distinction between the two kinds of relationship is thus pointed out by Prof. Mechem (p. 1952) :

"It not infrequently happens that the so-called stockbroker is approached merely as one of whom shares may be obtained, and under circumstances showing that it is a matter of indifference to the principal whether the broker supplies shares which he already owns or shares which he buys for the principal in the market, so long as the principal obtains them at the price indicated by him.    In the former case, the broker is rather a seller than an agent."

The trial court concluded that the relationship was that of vendor and purchaser, and with it, after a careful reading of the record, we are in accord.

The salesman here approached Hammond in an effort to sell him some of the Dort stock.    In answer to a question put by the court, "You knew from what he said that it was a new stock that they were just floating?" Hammond answered, "I knew that it was a new issue of stock."    He further testified, "I believe he said it was some additional stock that they were coming out with.  *  *  *  He did tell me it was

a new issue, and he told me that the standard price was 20 a share," and further, "He said Mr. Durant would look after the New York end of it. * * * That is what I banked on more than anything else."

While the letter of confirmation, written on a blank form, states that defendant had bought the stock for Holmes, it is important to note that the purchase was to be made without any commission to be paid by him. While it is true that a purchaser may give a broker an order to purchase a stock at a certain price net to him, and the relationship of principal and agent still exist, the proofs here submitted do not disclose any such understanding. Hammond knew that the standard price was $20 per share, and, as that was the amount he and Holmes were to pay, it must have been. apparent to him that defendant was either receiving a commission from some other person or was selling him some of the issue which he had secured on terms to justify a sale without commission. The trial court said:

"I think that no impression can be properly drawn from the testimony except this one that the purchaser' knew that this was a syndicated stock. That the purchaser knew just as much as the broker knew himself, of the relationship between the broker and the stock."

On the record before us we feel constrained to hold that the relationship existing between the parties was that of vendor and purchaser and not that of principal and agent. The following cases lend support to this conclusion: *Sutro* v. *Jacobson*, 96 N. J. Law, 555 (115 Atl. 79) ; *Taylor* v. *Guest*, 58 N. Y. 262; *Porter* v. *Wormser*, 94 N. Y. 431; *In re B. Solomon & Co.*, 268 Fed. 108.

The decree is affirmed, with costs to appellee.

FEAD, C. J., and NORTH, FELLOWS, WIEST, CLARK, MCDONALD, and POTTER, JJ., concurred.