HIBBERD *v.* FURLONG.

1. Principal and Agent—Purchaser and Broker.

Relationship established when intending purchaser gives his check and orders a broker to purchase a particular stock is that of principal and agent.

2. Same—Commingling of Funds.

General rule that agent must keep his principal's funds separate does not apply if commingling is authorized or was necessary to perform duty imposed on agent in carrying out the order of his principal.

3. Brokers—Commingling of Funds—Handling of Checks.

Intending purchaser bears loss through closing of bank in which his brokers deposited to their own account his check given with his verbal open order to them to purchase particular stock at specified price below the then market price in expectation that his name would not be disclosed to seller, where evidence indicates they handled his check in manner he desired and intended they should.

Appeal from Wayne; Richter (Theodore J.), J. Submitted October 2, 1934. (Docket No. 23, Calendar No. 37,930.) Decided December 10, 1934.

Assumpsit by Fred P. Hibberd against Edward J. Furlong and others, copartners doing business as Paine, Webber & Company, for sums alleged to be due. Judgment for plaintiff. Defendants appeal. Reversed and judgment ordered entered for defendants.

*DeVine, Kent & DeVine,* for plaintiff.

*George E. Brand,* for defendants.

NELSON SHARPE, C. J.  The defendants are agents
and brokers, transacting business on various stock
exchanges for their customers.  On Saturday, Feb-
ruary 11, 1933, at about 9:30 a. m., the plaintiff gave
one of defendants' employees a verbal open order
to purchase 30 shares of Detroit Edison stock at
$68 per share.  It was then selling around $68.50 or
$69 a share.  The order was accompanied by a check
on the First National Bank in Detroit, payable to
the order of the defendants, for $2,100, signed by
the plaintiff, and for which he was given a receipt
and the amount thereof credited to his account.  De-
fendants indorsed the check and deposited it on the
same day in the National Bank of Commerce in
Detroit.

Sunday, February 12th, was Lincoln's birthday,
and the day following was a bank holiday (2 Comp.
Laws 1929, § 9086), on which neither of the above
named banks was open.  Plaintiff's check was
cleared through the Detroit Clearing House on the
morning of February 14th, and the amount thereof
credited to the defendants' account in the National
Bank of Commerce.  Soon thereafter, and before
either of the banks was opened for business on that
day, a bank holiday was declared by proclamation
of the governor of the State, under which the banks
were kept closed, and neither of them has reopened.
The $2,100 deposit of defendants was intact in the
National Bank of Commerce at the time it closed.
The defendants received a dividend thereon from
the receiver, amounting to 40 per cent. of the de-
posit, which was turned over to the plaintiff.

This action was brought to recover the balance
claimed to be due plaintiff on his $2,100 check and
interest thereon.  Dividends amounting to 20 per

cent. and eight per cent. were afterwards received and paid to plaintiff on the understanding that his right to enforce payment was not to be affected thereby. On trial before the court without a jury, he had judgment for the balance, $672, and $76.70, interest, in all the sum of $748.70, from which this appeal has been taken.

The defendants contend that in their receipt of the check from plaintiff, the proceeds of which were to be used in the purchase of a stock when it reached a stated price, and their deposit of the same in their bank in the usual course of their business, they were acting as agents of the plaintiff and that the relationship of debtor and creditor was not established thereby. The plaintiff insists that the defendants, by depositing the check in their bank to their own credit and thus mingling its proceeds with their other moneys, treated it as their own, and that when it passed through the clearing house and was paid they thereby became his debtor to the amount thereof.

"It seems to be clearly established that when an intending purchaser orders a broker to purchase a particular stock for him, the relationship is that of principal and agent." *Trowbridge* v. *O'Neill*, 243 Mich. 84, 88.

The general rule applicable to the relationship of principal and agent is stated in 1 Mechem on Agency (2d Ed.), § 1335, as follows:

"It is the duty of the agent to keep the property and funds of his principal separate from his own. If, *without necessity,* he has so commingled the goods or funds of his principal with his own that he cannot discriminate between the two, the whole mass so undistinguishable must be held to belong to the principal. If, *without authority,* he com-

mingles in his dealings the goods of his principal and of himself, the principal will have the first charge upon the proceeds. So if he mingles the funds of his principal with his own and the whole is lost, the loss must fall upon the agent.

"This rule is of frequent application in cases where the agent has deposited money of his principal in a bank. In case it becomes necessary to make such a deposit, the agent will escape personal liability if he deposits it in the name of his principal in a bank of good credit, or if he so distinguishes it on the books of the bank as to indicate in some way that it is the money of his principal. If on the contrary he deposits it in his own name, or with his own funds, he will, in case of a failure of the bank, be liable to the principal for his money." (The italics are ours.)

This rule seems clearly established. But, as stated therein, it does not apply if the commingling of funds was by authority of the principal, or if it became necessary to do so in the performance of the duty imposed on the agent in carrying out the order of his principal.

"It is the duty of an agent to account for property or funds which he has received to be applied to a specific purpose, and if he fails to apply them to the purposes for which they were received, the principal may recover the same." 2 C. J. p. 736.

It appears that plaintiff had, on February 9th, given his check to defendants for the purchase of other stock, and that, after the banks had closed, this money was returned to him. He testified:

"I did not indicate to Paine, Webber & Company what they should do with the two checks. I contemplated that they would, as any broker would do, place it to any bank that they wanted to place it. I presumed that is what they would do, they had to

get the checks presented to get money on them. The general way would be to present them through a bank, yes, through the broker's bank, for payment;" that he did not question the judgment of the defendants in depositing his check in their bank; "I did not request them not to send it through any particular bank. I did not think they were going to hold my checks until I gave them an order, a further order. I contemplated that they would buy stock and if they bought stock they would not disclose my name to the person that sold the stock, in filling the order. I don't think that is the practice of brokers and I expected if they bought stock that they would probably pay it by checks on their own account. I did not ask them to open up a separate account for my checks; I did not expect it."

It will thus be seen that the plaintiff expected the defendants to deposit his check in a bank in which they did their business, and that it would be paid through the clearing house. He also expected that when the stock reached the price at which the defendants were instructed to purchase it they would pay for it by their personal check. He did not want them to hold his check and turn it over to the seller of the stock, as that would disclose his name as purchaser, which he did not want to be done.

Under these circumstances, what were the defendants called upon to do? If they deposited the check to his credit in their bank, or in a way to indicate that its proceeds belonged to him, it would have been necessary to secure another check from him before it could be used for the purpose intended. It was their duty to keep the proceeds of his check for immediate use at the time when the stock to be purchased with it reached the price at which they were instructed to purchase it. It seemingly became necessary for them to deposit it in their own bank to

their own credit, and the fair inference to be drawn from the plaintiff's testimony is that he gave them authority to do so.

The authorities relied on by plaintiff are applicable to an agent who receives moneys for, and to be delivered to, his principal, and who mingles them without authority in his personal account. Under the agency here created, the defendants received plaintiff's check for a specific purpose and deposited it, as he expected them to do, in their own account, to be in readiness at all times to make the purchase of stock in compliance with his instructions. Had they kept the check in their possession until the purchase was made, it would then have been necessary for them to deposit it in their own account in order to avoid the publicity incident to the purchase, and, if they had not presented it within a reasonable time, the plaintiff would have been discharged from liability thereon to the extent of the loss caused by the delay. 2 Comp. Laws 1929, § 9435.

"As a general rule of law every grant of power implies and carries with it, as an incident, authority to do whatever acts, or use whatever means are reasonably necessary and proper to the accomplishment of the purpose for which the agency was created, unless the inference of such power is expressly excluded by the instrument creating the agency or by the circumstances of the business to which the agency relates. Such incidental authority includes all acts and things which are connected with and essential to the business in hand; it is measured by the nature and necessities of the purpose to be accomplished and is *prima facie* coextensive with the business intrusted to the agent's care. The means adopted, however, should be such as are most usual, such means indeed as are ordinarily

used by prudent persons in doing similar business. This rule applies both to general and special agents unless the manner of doing the particular act is prescribed by the power." 2 C. J. pp. 578, 579, 580.

The conclusion seems unavoidable that the defendants handled this check in just the way the plaintiff desired and intended they should handle it, and that the loss incident to the closing of the bank in which it was deposited must be borne by him and not by the defendants.

The judgment is reversed and set aside, with costs to appellants, and the cause remanded to the trial court with direction to enter a judgment for the defendants.

POTTER, NORTH, FEAD, WIEST, BUTZEL, BUSHNELL, and EDWARD M. SHARPE, JJ., concurred.