ALISON *v.* WHITCOMB.

1. EVIDENCE—BROKERS—CONFIRMATION OF SALE.
    Written confirmation of sale of municipal bonds by brokers stating that it had been made by them as vendors and not as agents of buyer while not binding on the parties was *prima facie* proof that brokers were acting as vendors.

2. BROKERS—BURDEN OF SHOWING ERROR IN CONFIRMATION OF SALE.
    Plaintiff brokers who sent written confirmation of sale to defendants and who had burden of showing confirmation was erroneous in stating that plaintiffs were acting on their own account in selling the bonds and not as defendant's agents as now claimed *held,* not to have sustained such burden.

3. APPEAL AND ERROR—FINDINGS OF FACT—CONFLICTING TESTIMONY.
    Supreme Court is reluctant to disturb findings of fact which involve adoption of one of two conflicting versions of testimony and will not do so unless the facts clearly preponderate in opposite direction.

4. FRAUDS, STATUTE OF—BONDS—BREACH OF CONTRACT OF PURCHASE —AGENCY—TENDER.
    No written agreement for purchase of bonds having been executed by defendants as required by the statute of frauds, plaintiffs who failed to show they were agents of defendants in making the purchase and failed to sustain burden of showing they were not vendors cannot recover in an action for breach of an agreement to purchase, hence determination as to whether or not bonds tendered were ones purchased by defendants was unnecessary (2 Comp. Laws 1929, § 9443).

5. BROKERS—NATURE OF RELATION WITH CUSTOMER—INTENT—EVIDENCE.
    Whether relationship between plaintiffs, who had procured certain municipal bonds especially for defendants, and latter was that of agency or buyer and seller depends upon intention of the parties as determined by facts and circumstances.

6. SAME—EVIDENCE—RELATIONSHIP A QUESTION OF FACT.

Determination of whether relationship between plaintiffs and defendants who failed to accept delivery of bonds which plaintiffs claimed to have procured from another party as defendants' agents *held,* a question of fact for trial judge, where evidence shows the conversation between the parties, confirmation slip, and fact that defendants were merely desirous of obtaining certain bonds at a certain price.

7. SAME—OFFER TO PROCURE STOCK FOR ANOTHER—SALES.

Where a person knowing of stock which can be obtained, and knowing the price at which he can obtain it, offers to sell it to another for a fixed sum, which offer is accepted by the other, and he then procures the stock and tenders it, the transaction is not one of agency and the person offering the stock occupies the position of seller.

Appeal from Wayne; Merriam (DeWitt H.), J. Submitted April 13, 1939. (Docket No. 52, Calendar No. 40,462.) Decided June 5, 1939.

Action by Denis J. Alison and others, copartners doing business as Alison & Company, against Edgar B. Whitcomb and wife for damages for failure to accept delivery of bonds. Judgment for defendants. Plaintiffs appeal. Affirmed.

*Armstrong, Weadock, Essery & Helm (Joseph J. Marshall,* of counsel), for plaintiffs.

*Joslyn, Joslyn & Joslyn,* for defendants.

BUSHNELL, J. This is an action to recover damages claimed to have been suffered by plaintiffs because of defendants' failure to accept delivery of Bloomfield village district drain bonds of a par value of $26,000. The case was tried by the circuit judge sitting without a jury.

Plaintiffs, Alison & Company, are copartners in an investment banking business in the city of Detroit, in connection with which they operate a bond depart-

ment. They had been doing business with defendants for about 15 years, during which time there were many transactions between the parties.

Plaintiffs' salesman, Montgomery, who had been selling municipal bonds to defendants over this period, said that, on January 26, 1937, he telephoned Martin C. Callahan, an associate and personal financial representative of Edgar B. Whitcomb, and asked him if Mr. Whitcomb would be interested in the purchase of Bloomfield village drainage bonds at a price of 84¼, and that he referred Callahan to the bulletin of the Municipal Advisory Council, where detailed information could be obtained regarding the bonds; that Callahan called later in the day to know if the bonds were still available; when informed that they were not owned by plaintiffs but they probably were still available, Callahan said, "All right then, we will take them." Montgomery said that he then called Sattley & Company, who owned the bonds, and that he "purchased them on the strength of that order."

Alison & Company sent defendants a written confirmation of the sale of the bonds at 84½ flat, totaling $21,905. This confirmation, containing a description of the bonds, was dated January 26, 1937, and commences with this language:

"Confirming previous advices we have this day AS PRINCIPAL for our own account and not as your agent * * * SOLD TO Edgar B. & Anna S. Whitcomb as tenants in common," et cetera.

The confirmation does not show that any commission was charged on the sale. The bonds were delivered by Sattley & Company to Alison & Company on February 8th, and Montgomery said that, on that date, he "contacted" Mr. Whitcomb, who informed him that Callahan had purchased more bonds than he had expected he would, and he wanted to know

if delivery could be delayed, and later Whitcomb agreed to accept delivery of 10 of the bonds and to take the other 16 on February 15th. Montgomery said he took 10 of the bonds to Whitcomb's office, handed them to a clerk, who gave the accompanying legal opinion to Mr. Whitcomb, which he examined, and then informed Montgomery that he did not want the bonds, the reason being given that the legal opinion did not indicate that they were an obligation of the county.

On February 25, 1937, written notice was sent to Whitcomb that, "on January 26, 1937, as your agent, we purchased for your account—$26,000 Bloomfield village drain district, Oakland county, Michigan 6 per cent. bonds and confirmed the same to you at 84½ flat," and he was informed that unless delivery was accepted by March 1, 1937, the bonds would be sold at the market and the proceeds credited to his account. Delivery was not accepted and the bonds were sold at 79¾ on March 17th. Montgomery, the only witness produced by plaintiffs, insisted that a mistake was made in the form and language of the confirmation sent Whitcomb, Alison & Company's stenographer having used the wrong printed blank, and that, in the transaction, Alison & Company acted as an agent for Whitcomb and not as vendors in the purchase of the bonds.

The only testimony on behalf of defendants was that given by Callahan, who said that, when Montgomery telephoned him, he asked what sort of an obligation it was and whether the bonds were dated in the period that would carry with it a contingent guarantee, and that he was told they did. Callahan said that the only reason delivery was refused was because the bonds did not contain the contingent county guarantee.

The trial judge found that the relationship between the parties was that of vendor and purchaser. A judgment was entered for the defendants. The case turns on whether or not plaintiffs were acting as principals on their own account or as agents for Whitcomb.

The written confirmation of the transaction sent on January 26th, though not binding upon the parties, *Trowbridge* v. *O'Neill,* 243 Mich. 84, is nevertheless *prima facie* proof that Alison & Company was acting as a vendor. Meyer on The Law of Stock Brokers & Stock Exchanges (1st Ed.), pp. 294, 440. The burden of proving that this confirmation was erroneous rested upon plaintiffs. Evidence was introduced in support of this claim but it was not sufficiently convincing to permit us to overturn the determination of fact made by the trial judge.

"We are reluctant to disturb findings which involved the adoption of one of two conflicting versions in testimony and will not do so unless the facts clearly preponderate in the opposite direction." *Marciniak* v. *Sundeen,* 278 Mich. 407, 412.

It is unnecessary to determine whether or not the bonds that were tendered by Alison & Company were the ones that Whitcomb had purchased, because, if plaintiffs failed to sustain the burden of proof of their claim of mistake, then it must follow that Alison & Company were acting as vendors. Defendants cannot be held liable for damages arising out of an agreement to purchase bonds in the absence of a written order signed by them, this being required by the statute of frauds. 2 Comp. Laws 1929, § 9443 (Stat. Ann. § 19.244). No written order having been executed by defendants, plaintiffs cannot recover in an action for the breach of the agreement to purchase.

The facts show that Alison & Company contracted to sell the bonds to defendants. Whether the relationship was one of agency or that of buyer and seller depends upon the intention of the parties as determined by the facts and circumstances. Defendants were indifferent as to the character of the relationship, being concerned only with obtaining certain bonds at a certain price. *Trowbridge* v. *O'Neill, supra.* See quotation therein on page 88 from Mechem on Agency (2d Ed.), p. 1952.

The intention of plaintiffs is shown by the conversation between the parties and the confirmation slip, the purport of which, being disputed, raised a question of fact to be determined by the trial judge. *Noll* v. *Hirschfeld,* 224 Mich. 439.

We quote the following syllabus by the court from *Steiner* v. *Hughes,* 172 Okla. 268 (44 Pac. [2d] 857):

"Where a person knowing of stock, which can be obtained, and knowing the price at which he can obtain it, offers to sell it to another for a fixed sum, which offer is accepted by the other, and he then procures the stock and tenders it, the transaction is not one of agency and the person offering the stock occupies the position of seller."

See, also, *City of Bay City* v. *Lumbermen's State Bank,* 193 Mich. 533, and 2 C. J. S. p. 1031.

The judgment is affirmed, with costs to appellees.

BUTZEL, C. J., and WIEST, SHARPE, POTTER, CHANDLER, NORTH, and McALLISTER, JJ., concurred.