**H. Glen LEASON, Plaintiff-Appellee,**

**v.**

**John D. ROSART, Defendant-Appellant.**

**No. 85–5898.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Aug. 6, 1986.

Decided March 4, 1987.

---

Barry W. Sherman and Gerald I. Neiter, Los Angeles, Cal., for the defendant-appellant.

David C. Swedelson, Los Angeles, Cal., for the plaintiff-appellee.

Before TANG and BRUNETTI, Circuit Judges, and BRUCE R. THOMPSON,* District Judge.

PER CURIAM:

This is an appeal by John D. Rosart from a final judgment in favor of H. Glen Leason awarding $24,062.50 and interest in damages for Rosart's breach of two oral stock purchase agreements. Rosart assigns error to findings entered by the district court with respect to his statute of frauds defense. He also contests the measure of damages employed by the district court. District court jurisdiction was predicated on diversity of citizenship. 28 U.S.C. § 1332. This court has jurisdiction on appeal from a final judgment. 28 U.S.C. § 1291. We affirm in part and reverse in part.

In December of 1982, Leason was a stockbroker with the brokerage firm of H.J. Meyers and Company in Los Angeles, California. At that time, H.J. Meyers and Company offered shares of stock in Irvine Sensors Corporation. The firm held the publicly issued shares in a trading market it had created for the stock. The firm traded these shares for its own account and risk. Leason's employment contract with Meyers required him to absorb losses suffered by the firm in the event a customer reneged on his or her agreement to purchase stock from the firm's trading market. On such sales, Leason could not charge a commission.

Leason's first contact with Rosart occurred in November of 1982. Leason had been in Phoenix, Arizona and discussed the prospects of the Irvine Sensors stock with Rosart's neighbor there. The neighbor informed Rosart of the stock and was instrumental in putting Rosart in contact with Leason. Rosart expressed an interest in the Irvine Sensors, which had come on the market in late 1982 as a company dealing in satellite ground-observation technology. Rosart's testimony confirmed this interest, but he denied any intent to purchase stock before visiting the company's headquarters. Rosart requested a prospectus on the company. Rosart, a Canadian citizen who did business in Oakville, Ontario and also spent time in Phoenix, Arizona, gave Leason addresses at both places. Leason sent copies of the prospectus to both places.

On December 2, 1982, Rosart ordered 10,000 shares of Irvine Sensors stock at $7.25 per share—total price of $72,500, promising to pay by December 16, 1982. On December 6, 1982, Leason called Rosart, informing him of an offering of 12,500 shares of Irvine Sensors stock at $7.00 per share, which Rosart ordered for a total purchase price of $87,500. Rosart never paid for the stock. H.J. Meyers complied with 12 C.F.R. § 220.3(e) (1982) by liquidating Rosart's securities for a loss of $24,062.50. Leason, pursuant to his contract with H.J. Meyers, covered the firm's loss. In turn, the firm assigned its cause of action against Rosart to Leason.

Rosart rested his defense on Cal.Comm. Code § 8319(1)(c) and (2). In 1982, § 8319 provided:

(1) A contract for the sale of securities is not enforceable by way of action or defense unless

(a) There is some writing signed by the party against whom enforcement is sought or by his authorized agent or broker sufficient to indicate that a contract has been made for sale of a stated quantity of described securities at a defined or stated price; or

(b) Delivery of the security has been accepted or payment has been made but the contract is enforceable under this

* Honorable Bruce R. Thompson, Senior United States District Judge, District of Nevada, sitting

by designation.

provision only to the extent of such delivery or payment; or

(c) Within a reasonable time a writing in confirmation of the sale or purchase and sufficient against the sender under paragraph (a) has been received by the party against whom enforcement is sought and he has failed to send written objection to its contents within 10 days after its receipt.

(2) A contract relating to the purchase or sale of securities between a broker acting as an agent and his principal is not subject to the provisions of this section. (Stats.1963, c. 819, § 8319.)

■ Rosart argues that the district court clearly erred in finding that Leason acted as Rosart's agent for purposes of § 8319(2). We agree, but conclude that this error does not require reversal of the whole judgment because the district court also made specific findings and conclusions with respect to the application of subsection (1)(c) of the statute of frauds. A broker, in executing a customer's order on the stock exchange ordinarily acts as the customer's agent. *Cecka v. Beckman & Co.*, 28 Cal.App.3d 5, 104 Cal.Rptr. 374 (1972); *Griffin v. Payne*, 133 Cal.App. 363, 371, 24 P.2d 370, 373–74 (1933). In that setting, the definition at Cal.Civ.Code § 2295 is applicable: "An agent is one who represents another, called the principal, *in dealings with third persons....*" (Emphasis added). Where, on the other hand, the broker deals in securities he already owns, his relation to his customer is that of vendor, not agent. *In re Solomon & Co.*, 268 Fed. 108, 113 (2d Cir.1920); *Trowbridge v. O'Neill*, 243 Mich. 84, 219 N.W. 681, 682–83 (1928). *See also Manget Brothers, Inc. v. Bank of Greenwood, Miss.*, 381 F.2d 91 (5th Cir.1967). Here, Rosart placed his orders with H.J. Meyers through Meyers' employee. The order directed the purchase of stock held in Meyers' trading market. Leason did not charge Rosart a commission. The parties dealt with each other not as agent and principal, but rather as vendor and vendee. Because Leason was not a broker acting as agent, Cal.Comm.Code § 8319(2) does not exempt the oral contract

from the statute of frauds. This contract, however, does fall within the exception in subsection (1)(c) of the statute.

■ Rosart challenges the district court's finding that Rosart received confirmation of the December 2 purchase. Leason instructed his secretary, Melissa Sherman, to send written confirmation of the December 2 purchase to Rosart at both his Ontario and Arizona addresses. Ms. Sherman followed that directive on December 3. Leason's exhibit No. 107 is a copy of that confirmation. The address for Rosart bears the improper zip code. Rosart relies upon this fact to support his denial of receipt of that confirmation. However, the confirmation was never returned to H.J. Meyers and Company by the postal service. The district court weighed Rosart's denial of receipt against the inference of receipt from Leason's proof of mailing and decided the issue in Leason's favor. This was not clear error. *See* Cal.Evid.Code § 604 comment ("[I]f the adverse party denies receipt, the presumption [of receipt in the ordinary course of the mails] is gone from the case. The trier of fact must then weigh the denial of receipt against the inference of receipt arising from proof of mailing and decide whether or not the letter was received.") Since Rosart failed to object to this confirmation, he is bound by its contents.

Rosart admits receipt of confirmation of the December 6, 1982 purchase of 12,500 shares of Irvine Sensors stock. He contends the district court erred in finding his objection untimely. Rosart testified to an arrangement with the caretaker of his Arizona home whereby the caretaker would deliver each day's mail to Bruce Kromer, Rosart's attorney in Phoenix. Pursuant to this arrangement, the caretaker delivered a confirmation of the December 6 purchase to Kromer's office on December 13. The confirmation slip introduced by Rosart is stamped received on that date at Kromer's offices. Kromer testified that he called Rosart in Ontario that day and informed him of the contents of the confirmation.

Rosart testified that he mailed his written objection to the confirmation on December 21, 1982. Rosart argues that this uncontradicted testimony establishes timely objection to the confirmation of the December 6, 1982 purchase.

■ Leason maintains the record supports an inference that Rosart "constructively" received the confirmation prior to December 13, 1982. Leason fails to point to any evidence which would support an inference of earlier receipt. The record reveals no evidence of the sending of the confirmation. Leason testified that Merrill Lynch, H.J. Meyers's New York principal, would have generated the confirmation and that Leason instructed Merrill Lynch to send any confirmations to Rosart's two addresses. Yet Leason was unable to testify as to how the December 6 confirmation was in fact handled in New York. Leason notes that he did not receive the December 21 objection until December 28, but the timeliness of objection under the statute is determined by the date the customer *sends* his objection.

The testimony of Leason and Rosart was in direct conflict respecting the negotiations and orders for the purchase and sale of stock. Obviously, the district judge believed Leason and discredited Rosart. The district judge may also have discredited Rosart's uncontradicted evidence to the effect that the confirmation notice of the December 6th transaction was received on December 13th and that he mailed the objection letter on December 21st. No reasons were given for not believing Rosart's uncontradicted evidence of timely objection. The applicable principles in these circumstances have been long established. *Joseph v. Donover Company*, 261 F.2d 812, 818–24 (9th Cir.1958); *Yip Mie Jork v. Dulles*, 237 F.2d 383 (9th Cir.1956). In *Yip Mie Jork* the court said:

A court may reject evidence, but it may not do so arbitrarily. This court has on numerous occasions held that the trier of fact need not accept uncontradicted testimony when good reasons appear for rejecting it, such as the interest of the witness, and improbabilities and important discrepancies in the testimony. However, when uncontradicted testimony has been rejected *without* good reason, we have reversed. E.g., *Gung You v. Nagle*, [9 Cir.1929, 34 F.2d 848], supra; *Louie Poy Hok v. Nagle*, 9 Cir., 1931, 48 F.2d 753.

*Id.* at 385 (emphasis theirs); *see also Damaize-Job v. I.N.S.*, 787 F.2d 1332, 1338 (9th Cir.1986).

On the record before us, all the evidence supports a timely objection by Rosart to the confirmation of the December 6, 1982 purchase. Rosart was therefore not bound by the contents of that writing because of Cal.Comm.Code § 8319.

■ Rosart argues the district court's finding of $24,062.50 in damages was clearly erroneous. Title to the stock ordered by Rosart had passed to him under Cal.Comm. Code § 8313. That provides in part:

(1) Transfer of a security or a limited interest (including a security interest as indicated in Section 8321) therein to a purchaser occurs only:

(d) At the time a financial intermediary, not a clearing corporation, sends him or her confirmation of the purchase and also by book entry or otherwise identifies as belonging to the purchaser any of the following:

(i) A specific certificated security in the financial intermediary's possession.

(ii) A quantity of securities that constitute or are part of a fungible bulk of certificated securities in the financial intermediary's possession or of uncertificated securities registered in the name of the financial intermediary.

(iii) A quantity of securities that constitute or are part of a fungible bulk of securities shown on the account of the financial intermediary on the books of another financial intermediary.

Here, Rosart's account with Merrill Lynch, through H.J. Meyers, had been credited with 22,500 shares of stock ordered by him on December 2 and 6, 1982. The confirmations of those purchases were sent to Ro-

sart. On December 28, 1982, after demanding payment and notifying Rosart that the firm would have to sell out his account in lieu of payment, H.J. Meyers sold out Rosart's account to Leason. In so doing, H.J. Meyers complied with Federal Reserve Regulation T (12 C.F.R. § 220.3(e) (1982)) and foreclosed its lien on those shares of stock, which it held in Rosart's account as Rosart's pledgee. *Blankenhorn-Hunter-Dulin Co. v. Thayer,* 199 Cal. 90, 247 Pac. 1088, 1089 (1926); *see also Griffin v. Payne,* 133 Cal.App. 363, 24 P.2d 370, 374 (1933); *Bennett v. Logan & Bryan,* 80 Cal.App. 571, 252 Pac. 662, 665 (1927); 12 Am.Jur.2d *Brokers* § 128 (1964). The value of the shares had dropped in price, and H.J. Meyers suffered a post-sellout deficiency of $24,062.50.

Leason purchased the stock from Meyers for his own account and later sold it at a gain. That gain partially covered Leason's personal loss under his obligation to Meyers. Leason's net loss under that obligation was $2,500. But Leason's obligation to Meyers should play no part in the damages equation. Meyers suffered the loss on its security. Leason sued as assignee of the right to recoup that loss. The fact Leason was the covering purchaser does not mitigate Meyers's actual loss.

Because we reverse with respect to the December 6, 1982 purchase, only those damages suffered by H.J. Meyers on the earlier purchase are recoverable. Rosart purchased those shares on December 2, 1982 for $72,500. Meyers sold these shares out of Rosart's account for $56,250. Meyers's loss on the December 2, 1982 trade was $16,250. This action is remanded with instructions to amend the judgment to award the sum of $16,250.00 in principal in lieu of the earlier award of $24,062.50.