PALMER *v.* SHANK FIREPROOF STORAGE CO.

1. PRINCIPAL AND AGENT—AGENT MAY NOT SELL PRINCIPAL'S PROPERTY TO HIMSELF.

An agent having power to sell or convey the property of his principal, may not make a binding sale or conveyance to himself, either directly or indirectly.

2. BROKERS—COMMISSIONS—BROKER MAY NOT RECOVER COMMISSION WHERE HE WAS INTERESTED IN PURCHASE.

In an action by a real estate broker for commissions on the sale of real estate which was never consummated because of alleged misrepresentations by defendants, the trial court properly directed a verdict in favor of defendants, where it appeared that plaintiff was interested personally in the prospective purchase.

Error to superior court of Grand Rapids; Verdier (Leonard D.), J. Submitted January 12, 1927. (Docket No. 90.) Decided April 1, 1927.

Assumpsit by W. Millard Palmer against the Shank Fireproof Storage Company and another for commissions on the sale of real property. Judgment for defendants. Plaintiff brings error. Affirmed.

*Travis, Merrick, Warner & Johnson,* for appellant.

*Grant Sims,* for appellees.

SHARPE, C. J. The plaintiff is a licensed real estate dealer in Grand Rapids of many years' experience. The defendant corporation was, on April 10, 1924, engaged in the business indicated by its corporate name. The defendant Archer Shank was at that time the secretary and treasurer of the corporation. There was then outstanding 695 shares of its capital stock, of which Shank owned 458 shares, his wife owned 100

---

[1]Agency, 2 C. J. § 358; [2]Brokers, 9 C. J. § 69; 45 L. R. A. 37; 20 L. R. A. (N. S.) 1158; 3 R. C. L. 275; 21 R. C. L. 829; 1 R. C. L. Supp. 1102.

shares, and the balance was owned by other persons. It at that time owned the building in which it conducted its business and the land on which it stood.  On the above date, a listing contract was executed by the company, by Shank as secretary and treasurer, wherein the plaintiff was appointed its agent to make sale of its property for the price of $200,000, payable $60,000 in cash and the balance secured by mortgage, and he was authorized to accept a deposit and to execute a binding contract of sale for the company.  In case a sale was made, he was to receive an agreed-upon commission for the service rendered.  The contract was to continue until May 1st.

Plaintiff entered into negotiations for the sale of the property with Bernard J. Zevalkink and his brother John.  These brothers and their relatives owned the stock in and operated the Columbian Storage and Transfer Company in that city.  It also appears that he talked with Charles E. Norton, a broker engaged in the business of financing corporations and selling their securities, relative to the organization of a corporation to take over defendants' property, of which the plaintiff was to be a stockholder.

On April 22d plaintiff gave to the Zevalkinks a receipt, reading as follows:

"Received of Messrs. B. & J. Zevalkink check of Columbian Storage and Transfer Co. for
"Five thousand and 00/100 Dollars as a deposit to be tendered to the Shank Fireproof Storage Company for a contract of sale of its real estate and business at 19 to 25 LaGrave Avenue to us, and as a part of the first payment of $10,000.00 of which I am to provide $5,000 to be made upon a contract approved by us."

Eight days later, plaintiff wrote to defendant the following letter:

"This is to confirm my verbal notice of Tuesday, April 22, 1924, to you that Messrs. B. and J. Zevalkink have deposited the stipulated amount of five thousand

($5,000.00) dollars with me to be applied on the purchase price and for sale of the property 19-25 LaGrave Avenue, S. E., Grand Rapids, Michigan, the equipment and storage business, exclusive of accounts receivable, and I have agreed with them to the sale on your behalf under your contract of April 10, 1924, with me."

Plaintiff testified:

"After a number of conferences with the Zevalkinks and also with Mr. Wesselius, their attorney, this check was given to me, it was handed to me by Mr. Wesselius as payment toward the purchase price of the property under specifications I had received from Mr. Shank. I think I had my final conversation with Messrs. Zevalkink the day before the check was delivered.    In that conversation the question was brought up of finally taking the property, the amount that was to be paid and what was to follow after.    I had worked with them for some days to get them to agree to the purchase, and as an evidence of my good faith in the proposition I said I would put in $5,000 if they would take the property at the price of $200,000.    I knew when I got my commission I would have the $5,000 to pay out of it.    The commission under this contract amounts to $8,050."

The deal was not consummated.    It is plaintiff's claim that the Zevalkinks refused to further proceed on learning that representations as to the earnings of the company for the year 1923, made by Shank to plaintiff and communicated by him to them, were, on an examination of the books of the company, found to be untrue.    He brings this action to recover on the contract, and, if such right be denied him, then to recover on the *quantum meruit* for the value of the service rendered by him in his effort to procure a sale of the property.    The trial resulted in a directed verdict for the defendants.    The plaintiff reviews the judgment entered thereon by writ of error.

Counsel discuss the right of plaintiff to recover against the defendant corporation, it appearing that no action had been taken by the stockholders authorizing

the sale, and, in case it be held not to be liable, then his right to recover against the defendant Shank personally.

In our opinion, the facts disclosed as to plaintiff's personal interest in the purchase prevents recovery on his part, and renders a discussion of the other questions unnecessary. His own testimony and the receipt given by him to the Zevalkinks clearly show that he was to have an interest in the property if the purchase by them had been concluded.

In a voluminous note to *In re Acken*, Ann. Cas. 1912A, 1172, it is said by the annotator:

"As announced in the reported case, it is a well-settled rule that an agent, having power to sell or convey the property of his principal, cannot make a binding sale or conveyance to himself, either directly or indirectly."

Many cases are cited to support this rule. The Michigan cases follow: *Ingerson* v. *Starkweather*, Walk. Ch. 346; *Moore* v. *Mandlebaum*, 8 Mich. 433; *Ames* v. *Booming Co.*, 11 Mich. 139 (83 Am. Dec. 731); *People* v. *Township Board of Overyssel*, 11 Mich. 222; *McKay* v. *Williams*, 67 Mich. 547 (11 Am. St. Rep. 597); *McNutt* v. *Dix*, 83 Mich. 328 (10 L. R. A. 660); *Green* v. *Knoch*, 92 Mich. 26. To these may be added *Hogle* v. *Meyering*, 161 Mich. 472.

Under the subhead "effect of adequacy of consideration" it is said:

"Also the fact that the agent purchases for himself at the price set by the principal is not sufficient to sustain a purchase for himself."

Many cases are cited in support of this statement. See, also, *Rodman* v. *Manning*, 20 L. R. A. (N. S.) 1158, and note thereto; 21 R. C. L. p. 829; 31 Cyc. p. 1437.

This rule seems to be so well established that further discussion of it is unnecessary. What may be called

an exception to it may be noted.   Where an agent is authorized to sell at a stated price, and is entitled to receive all he can get over that price for his services in making the sale, he may indirectly become the purchaser himself without disclosing that fact to the principal.   This court so held in *Hutton* v. *Sherrard*, 183 Mich. 356 (L. R. A. 1915E, 976), and such holding was cited with approval in *Wilson* v. *White*, 223 Mich. 497, and *Tallman* v. *Burroughs*, 224 Mich. 317.

The record does not disclose any ratification of the listing contract by the defendants after the fact of plaintiff's interest in the purchase became known to them.

The judgment is affirmed.

BIRD, SNOW, STEERE, FELLOWS, WIEST, CLARK, and McDONALD, JJ., concurred.