WINKLER v. MEYERING LAND CO.

1. BROKERS—CANCELLATION OF INSTRUMENTS—SUBDIVISION AGENCY CONTRACT—CONVEYANCE OF LOTS.

   In canceling subdivision owners' agency contract with broker under which latter was to receive all in excess of stated sum per acre, decree ordering conveyance of certain lots upon which owners had received said stated sum, by warranty deed, pursuant to contract provision therefor, but subject to outstanding land contracts, *held*, proper.

2. SAME—PURCHASE BY BROKER IN EXCESS OF STATED SUM.

   Agent may indirectly become purchaser of property, the subject of his agency, without disclosing that fact to his principal, where his contract with principal is that his compensation is to be all that he can obtain over a stated price.

3. EQUITY—CANCELLATION OF INSTRUMENTS—ACCOUNTING—COLLECTI-
BILITY OF LAND CONTRACTS.

In suit for cancellation of and accounting under subdivision
agency contract, holding of court that collectibility of certain
land contracts on lots therein should be determined as of a
certain future date and that broker's interest terminated if
no payments were made in the meanwhile, properly protected
interests of both parties.

4. ACCOUNTING—EQUITY—RECORD—FURTHER ACCOUNTING.

Decree as to accounting made under subdivision agency contract
is approved upon record presented where decree also provided
that parties should have such further accounting as might be
found necessary.

5. EQUITY—CANCELLATION OF INSTRUMENTS—BROKERS—TAXES.

Subdivision owner is not equitably entitled to have his broker
required to pay taxes on any lots returned to owner before
cancellation of agency contract, where interest of broker who
was to receive excess above stated sum was terminated and
agency contract makes no provision requiring it to pay taxes.

6. APPEAL AND ERROR—BROKERS—TAXES.

Decree requiring real estate broker under subdivision agency con-
tract to pay portion of taxes on lots sold under land contracts
in which it still had an interest is affirmed on appeal by owner
where broker did not file cross-appeal although contract
nowhere provided that it pay taxes on any lots.

Appeal from Macomb; Spier (James E.), J.  Sub-
mitted January 19, 1934.  (Docket No. 109, Calendar
No. 37,566.)  Decided April 3, 1934.

Bill by Charles Winkler and wife against Meyer-
ing Land Company, a Michigan corporation, for
cancellation of an agency contract, an accounting and
other relief.  Cross-bill by defendant against plain-
tiffs for an accounting and execution of certain
deeds.  Decree for defendant.  Plaintiffs appeal.
Affirmed.

*George W. & Clifford A. John,* for plaintiffs.

*Lungerhausen, Weeks, Lungerhausen & Neale,* for defendant.

BUTZEL, J. Charles Winkler and Minnie E. Winkler, plaintiffs, were the owners of a 77-acre farm in Harrison township, Macomb county, Michigan. In January, 1925, they entered into a written contract with the Meyering Land Company, defendant, appointing it their exclusive agent for the sale of the land. The contract provided that plaintiffs at their own expense were to plat the property into lots of one acre, more or less, grade and cinderize the streets, etc., while defendant was to do the surveying, undertake the sale of the lots, and make the collections on contracts with prospective purchasers, rendering monthly statements of all collections to plaintiffs. As compensation for its services, defendant was to receive any amount it was able to obtain in excess of $550 per acre. The pertinent provisions of the contract in this regard are as follows:

"5. The party of the second part shall receive and the parties of the first part agree to pay to the said second party as a compensation for its services, in the sale of any or all of the above-described lots any amount the said second party may be able to obtain in excess of the sum of $550 per acre. After a plat has been prepared then a net price shall be placed on each lot according to its size. The aggregate sum of which price shall not exceed the net amount of $550 per acre as mentioned and the said second party shall receive as a compensation for its services whatever amount it may be able to obtain in excess of the said net price or prices so computed as follows:

"(a) Said second party shall receive the first 15 per cent. paid on said lot or lots, and thereafter 50 per cent. of the subsequent payments until its

interest shall have been fully paid and satisfied, in-
cluding interest at the rate of six per cent. per
annum on its equity in property sold.

"(b)   In the event of forfeiture by the purchaser
of any lot or lots, then the interest of the said second
party shall cease in so far as its equity in such lot or
lots through said sale is concerned, except as to the
first 20 per cent. and subsequent payments that may
have been made thereon, but in such event, the said
lot or lots may be resold by the said party of the
second part on the original basis mentioned herein."

The property was divided into 76 lots, all of which
were sold by the land company during 1925 and 1926,
mostly under land contract. Some of the lots were
resold by defendant after forfeiture and repposses-
sion by plaintiffs. Ten of the 76 lots fronted on
Riverside Drive and are referred to in the record as
the front lots. These 10 parcels were all sold on
contract, and plaintiffs have already received there-
on all the payments to which they are entitled under
the sales agreement. They concede that all further
payments collected on these contracts belong to de-
fendant. Plaintiffs have already netted a sum in
excess of $21,000 from the sale of lots by defendant.
A number of years prior to the date of the agree-
ment plaintiffs had placed a mortgage upon the
property, on which $5,500 or more is still due. They
agreed to give good title by warranty deed on the
sale of each lot. However, the mortgage still is a
first lien on the 10 front lots, as well as on other
property in the subdivision.

In the fall of 1931, disputes arose in regard to
collections, and plaintiffs, charging irregularities by
defendant, brought suit for cancellation of the con-
tract and an accounting. Defendant filed an answer
denying the charges, and a cross-bill in which it

asked for an accounting for moneys due it from plaintiffs, and for deeds to the front lots, in which it claimed plaintiffs' interest had been paid in full. The trial judge rendered a decree cancelling the contract. It was ordered that plaintiffs convey to defendant by warranty deed, subject to the outstanding land contracts, all their right, title and interest in the 10 front lots; that plaintiffs pay to defendant $811.09 in full satisfaction of the accounting between the parties for moneys collected on the several contracts; that a receiver be appointed, who should receive and collect all moneys due from the vendees on 16 specific contracts which the court determined to be "live" contracts, and distribute the proceeds between plaintiffs and defendant as ordered; that defendant should have no future rights in any of the aforesaid land contracts upon which no payments were collected between the date of the decree and January 1, 1934; that a certain designated amount be retained by the receiver out of the $811.09 and future collections due to defendant on the "live" contracts, to secure the payment of defendant's proportionate share of the taxes due on such contracts. In addition plaintiffs were restrained from disposing of any of their interest in the above property, and from making any further collections on the specified land contracts. The court also stated that the parties might apply for such other and further relief as might be necessary to carry out the terms and intent of the decree, and for such further accounting as might be found necessary.

Plaintiffs have appealed from this decree, claiming primarily that the court erred in the following respects: (1) in declaring defendant entitled to warranty deeds to the 10 front lots; (2) in determining that there were 16 outstanding good contracts;

(3) in finding that there was $811.09 due defendant from plaintiffs for moneys collected; (4) in ordering defendant to pay only a specified proportionate share of the taxes due merely on the "live" contracts. Defendant has not filed a cross-appeal.

(1)   Did the court err in ordering plaintiffs to convey to defendant the 10 front lots, subject to the outstanding land contracts?

Plaintiffs have already received all the payments to which they were entitled on these lots under the sales agreement, and concede that any further proceeds from the contracts belong to defendant. Nevertheless, plaintiffs claim that upon forfeiture of the vendees' interest in these contracts, the title to the front lots should revert to them, and that the court was, therefore, in error in ordering the conveyance of such lots to defendant. It must be admitted that the sales agreement is very unclear on this point. Paragraph 4 (f) provides that plaintiffs shall deliver a warranty deed for any lot or lots, free and clear of any incumbrance, upon the demand of defendant or purchasers under it, on the payment in full of such lot or lots. Defendant contends that the phrase "payment in full" refers to the net amount of $550 per acre, which plaintiffs were to receive under the agreement, and that the land company is therefore entitled to a deed to any lot after receipt of that sum by plaintiffs. This interpretation was accepted by the trial court.

Under paragraph 5 (b) of the agreement defendant is protected in the event of forfeiture of any lot or lots by a provision that it may resell such lot or lots on the original basis. Plaintiffs have come into equity, seeking cancellation of the agreement, and the termination of all dealings between the parties— a course which would deprive defendant of the

opportunity to protect itself upon forfeited contracts by resale. The order of the court represents the only proper and equitable disposition that can be made of the rights of the parties upon cancellation of the agreement. The contract provided that plaintiffs should receive $550 per acre, and that any surplus over this amount should go to defendant as compensation. Plaintiffs have already received all they are entitled to from the sale of the lots in question, while large balances are still owing to defendant. In this situation it would be highly inequitable to return the contracts to the plaintiffs and thus deprive defendant of any right to the future collections on these lots, to which it alone is entitled. In making provision for the conveyance of the 10 front lots to defendant, the court protected plaintiffs in their obligation to vendees under the land contracts, by directing that the deeds to defendant be made subject to the outstanding land contracts.

The present case does not fall within the rule contended for by plaintiffs, that one who contracts to sell property for another cannot purchase it for himself. Rather it falls within the exception to the rule, that when an agent is authorized to sell at a stated price and his compensation is fixed at any amount he can secure for the property in excess of such price, he may indirectly become the purchaser himself, even without disclosing that fact to the principal. *Hutton* v. *Sherrard,* 183 Mich. 356 (L. R. A. 1915E, 976); *Wilson* v. *White,* 223 Mich. 497; *Tallman* v. *Burroughs,* 224 Mich. 317; *Palmer* v. *Shank Fireproof Storage Co.,* 237 Mich. 627.

(2) Plaintiffs object to the court's determination that there were 16 "live" contracts, upon which collections might yet be made. They contend that only five of the specified contracts could by any possibil-

ity be held to be "live" contracts. We can find no error in the court's determination on this point. The court limited its decree by requiring that the collectibility of the contracts in dispute be determined by January 1, 1934, and by declaring defendant to have no future rights in any of such contracts upon which no genuine payments were made during this interval. The collectibility of the contracts in question was highly problematical at the time of the decree, and the testimony on the subject was largely in conflict. We cannot say that the court was in error in accepting defendant's version. The disposition made by the trial court properly protected the interests of both parties, and cannot be criticized.

(3) Plaintiffs claim error in the court's finding that there was the sum of $811.09 due defendant from plaintiffs for moneys collected. We have carefully examined the testimony, as well as the accounts submitted by both parties, which come to us in a very crude form. The conclusions to be drawn depend in a large measure upon the credibility of the witnesses, and plaintiff Charles Winkler's testimony and conduct during the hearing were not such as to impress the trial judge with his accuracy. We approve of the judge's findings. In a supplemental brief filed upon request of this court, plaintiffs for the first time allege that $200 of the amount claimed to be due from them was turned over to the receiver appointed by the trial court. The trial court in its decree ordered that the parties should have such further accounting as might be found necessary. Plaintiffs thus are not precluded from securing any relief to which they are entitled upon proper showing.

(4) The question arose as to the manner in which the payment of the taxes due on the lots in question

should be allocated. The court ordered that defendant turn over to the receiver out of the $811.09 to be paid to defendant by plaintiffs the sum of $61.92, approximately one-fourth of the unpaid taxes upon the live contracts for the years up to and including 1931, to be used as security for the payment of defendant's proportionate share of such taxes. This proportion was based upon the respective interests of plaintiffs and defendant in the balances still unpaid on the live contracts at the date of the decree. The court also ordered that the receiver retain from future collections due the defendant on these lots a similar proportion to secure unpaid taxes for 1932, and subsequent years.

Plaintiffs contend that all taxes on all the lots, including those due upon the "dead" contracts, which were returned to plaintiffs, should be paid before defendant is entitled to any payments whatsoever. Certainly defendant should not be required to make any payment of the taxes upon lots now solely belonging to plaintiffs, and in which defendant no longer has any interest. Furthermore, the contract nowhere provides that defendant is required to pay any of the taxes upon the property sold, or to make any provision for their payment. Defendant has not appealed from the decree, and we see no reason to disturb the court's findings on this point.

We believe that plaintiffs have received everything to which they were entitled under the decree. The decree is affirmed, with costs to defendant.

Nelson Sharpe, C. J., and Potter, North, Fead, Wiest, Bushnell, and Edward M. Sharpe, JJ., concurred.